978 F.2d 1260
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Larry WALLACE, Frederick Wallace, and Tony Joe Bryant,
Defendants-Appellants.
 Nos. 91-5946 to 91-5948.
 United States Court of Appeals, Sixth Circuit.
 Oct. 26, 1992.
 
 Before KEITH, DAVID A. NELSON and RYAN, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendants Tony Joe Bryant, Frederick Louis Wallace, and Larry James Wallace appeal from convictions for armed bank robbery. Mr. Bryant also appeals from a conviction for using and carrying a firearm during and in relation to a crime of violence, while Larry Wallace appeals from his sentence. Finding no error, we shall affirm both the convictions and Mr. Wallace's sentence.
 
 
 2
 * On January 17, 1990, at approximately 10:30 a.m., two armed men wearing masks robbed a branch of the Savetrust Bank in Newburn, Tennessee. A passer-by flagged down a Newburn police officer soon thereafter and reported that he had seen two black males run out of the bank and get into a gray car. Radio alerts were promptly put out for the car.
 
 
 3
 The robbers switched from the gray car to a blue van outside a nearby housing project. A resident of the project, Mrs. Mary Julia Heathcott, saw three men move objects from the trunk of the car into the van. Both vehicles then drove off on Highway 77, heading toward Dyer, Tennessee.
 
 
 4
 After learning of the bank robbery from her sister, who had heard the radio alert, Mrs. Heathcott asked her nephew to call the Newburn police. The police dispatcher then broadcast the information about the change in vehicles.
 
 
 5
 Officer Don Curry, who was monitoring reports about the bank robbery, parked his police cruiser beside westbound Highway 77 at the point where the highway enters Dyer about 15 miles west of Newburn. A blue van passed Officer Curry's location at approximately 11 a.m., just as word came over the radio that the robbers might have switched to a blue van. The officer followed the van but did not attempt to stop it.
 
 
 6
 The van soon stopped at a road-side gas station. Officer Curry parked behind it. The driver of the van, who proved to be defendant Frederick Wallace, came out to fill his gas tank, and the officer asked him for identification. Mr. Wallace produced his driver's license. Officer Curry then asked Mr. Wallace where he was coming from. The reply--Kentucky--tended to confirm the officer's suspicions, because the route into Dyer on Highway 77 would be fifty miles out of the way for someone coming from Kentucky.
 
 
 7
 After asking Mr. Wallace to stand by the patrol car, Officer Curry then walked around the van and requested a man seated in the passenger seat to get out. He did so, identifying himself as Tony Joe Bryant. The officer asked Mr. Bryant where he was coming from. Bryant first asked what Wallace had said, and then, when pressed to answer, replied "I guess Kentucky."
 
 
 8
 The Dyer chief of police, John Etheridge, pulled into the gas station at this juncture, and Officer Curry asked Mr. Bryant to step over to the Chief's car. Bryant complied with the request. The door on the passenger side of the van remained open, and through the open door Officer Curry observed a third man lying face down in the rear of the van with his right hand under his chest. Fearing that the man was hiding a gun, Officer Curry drew his own weapon and ordered the man (defendant Larry Wallace) out of the van. As Mr. Wallace stood up to leave, Officer Curry saw defendant Bryant move to a soft drink machine and throw something behind it. When the officer looked behind the machine, he found money scattered about. Chief Etheridge gathered $5,758 from behind the machine, including all fifty of the twenty-dollar bait bills taken in the Savetrust robbery. The three defendants were then placed under arrest.
 
 
 9
 Each man was subsequently indicted on two counts: armed bank robbery and aiding and abetting the same (18 U.S.C. §§ 2113(d) and 2) and carrying and using a firearm during and in relation to a crime of violence (18 U.S.C. § 924(c)). The case went to trial before a jury, and Mr. Bryant was convicted on both counts. The Wallaces were convicted on the bank robbery charges and acquitted on the firearm charges.
 
 II
 
 10
 All three defendants assert on appeal that the district court erred in not suppressing the evidence obtained as a result of their detention. The defendants offer a variety of theories as to how their Fourth Amendment rights were violated: that Officer Curry had no basis for questioning the defendants initially, that an impermissible seizure occurred when Fred Wallace and Bryant were told to stand by one or the other of the police cars, and that Officer Curry conducted an impermissible warrantless search of the van. None of these theories is persuasive.
 
 
 11
 United States v. Terry, 392 U.S. 1 (1968), teaches that a law enforcement officer who has a particularized and objective basis for suspecting a particular person of criminal activity may detain the suspect briefly for investigation purposes. Id. at 27. Cf. United States v. Cortez, 449 U.S. 411 (1981). Officer Curry clearly had a "particularized and objective basis" for questioning the defendants in this case. From radio bulletins, he knew the direction in which the suspected bank robbers were travelling, the highway they were taking, the time they had left Newburn headed towards Dyer, the type and color of the vehicle they were in, and their race. All of this information was consistent with the hypothesis that the men who had just arrived at the gas station were the men he was looking for.
 
 
 12
 Officer Curry's request that Mr. Bryant get out of the van was not improper. It is permissible to ask passengers to step out of a vehicle during a Terry stop if there is a reasonable suspicion that the passengers might be armed. Pennsylvania v. Mimms, 434 U.S. 111, 122-23 (1977) (Marshall, J., dissenting) (noting that the logic of the majority's holding extended to passengers and driver alike). Because the officer had reason to suspect that the defendants had recently committed an armed bank robbery, there was a reasonable suspicion that Mr. Bryant was still armed.
 
 
 13
 The requests for the defendants to stand beside the police cars were not improper, and the men were not required to remain there for an unreasonable length of time. There is "no rigid time duration on Terry stops." United States v. Sharpe, 470 U.S. 675, 686 (1985). The test applied in Sharpe was "whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly during the time it was necessary to detain the defendant." Id. (refusing to find a twenty-minute Terry-type detention unreasonable). The defendants have presented no evidence that Officer Curry did not work diligently in attempting to confirm his suspicions, and the entire episode at the gas station consumed only a few minutes.
 
 
 14
 Finally, no Fourth Amendment violation occurred when Officer Curry ordered defendant Larry Wallace out of the van at gunpoint. The officer first viewed Mr. Wallace through the door left open by Mr. Bryant, and the officer entered the van through the same door. There was no unreasonable search. The seizure of Larry Wallace exemplifies the type of law enforcement behavior that the Supreme Court took pains not to foreclose when it articulated the Terry test: "Would the facts available to the officer at the moment of the seizure ... warrant a man of reasonable caution in the belief that the action taken was appropriate?" Terry, 392 U.S. at 22. Officer Curry's actions were obviously appropriate under this test.
 
 
 15
 Both Larry Wallace and Fred Wallace allege error in the district court's denial of their motions for a judgment of acquittal or, in the alternative, for a new trial on sufficiency of the evidence grounds. They also contend that newly discovered evidence necessitated a new trial.
 
 
 16
 As "new evidence," Larry Wallace relies on a subsequent trial of himself and Fred Wallace on drug charges. Certain statements made by the Wallaces during interrogation were ruled inadmissible in that trial. The Wallaces also point to a post-trial affidavit in which Mr. Bryant absolved them of responsibility for the bank robbery.
 
 
 17
 Absent a clear abuse of discretion, we will not disturb the denial of a new trial on appeal. United States v. Cordle, 377 F.2d 522, 523 (6th Cir.1967), cert. denied, 389 U.S. 961 (1967). To obtain a new trial on the basis of newly discovered evidence, the defendant must show that such evidence "(1) was discovered only after trial, (2) could not have been discovered earlier with due diligence, (3) is material and not merely cumulative or impeaching, and (4) would likely produce an acquittal if the case were retried." United States v. Barlow, 693 F.2d 954, 964 (6th Cir.1982).
 
 
 18
 The decision by another district judge to suppress statements made by the Wallaces during interrogation was based upon a disagreement between two F.B.I. agents as to the reading of Miranda waiver forms. One of the agents testified in the drug case that the defendants read the forms out loud; the other agent testified that they read the forms to themselves. Only one of the agents testified in the trial of the bank robbery case that is before us here, and his testimony did not specify whether the defendants read the forms aloud or silently. Defendants' counsel did not object to the agent's testimony.
 
 
 19
 We have some difficulty with the proposition that the minor discrepancy in the subsequent testimony of the FBI agents constituted "new evidence." If it was, it fails the second and fourth parts of the Barlow test. The discrepancy could have been discovered earlier with due diligence, and even if it had been known, an acquittal would have been most unlikely.
 
 
 20
 Barlow also considered a defendant's post-trial exoneration of a co-defendant. In Barlow two defendants were tried together for conspiracy and theft. Both were convicted. Barlow's co-defendant subsequently wrote a letter stating that Barlow had no role in the theft. The trial court found that the letter lacked credibility, and a motion for new trial was denied on that basis. This court affirmed the judgment.
 
 
 21
 In the case at bar, the district court obviously took Mr. Bryant's credibility into account. We believe that the record amply supports the district court's determination that Mr. Bryant's testimony would not have produced an acquittal in the event of a new trial. There was no abuse of discretion is refusing to grant such a trial.
 
 
 22
 As far as the sufficiency of the evidence against the Wallaces is concerned, "[e]vidence is sufficient to support a criminal conviction if, after viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt." United States v. Beddow, 957 F.2d 1331 (6th Cir.1992), citing Jackson v. Virginia, 443 U.S. 307, 391 (1979). A rational factfinder could clearly have found the Wallaces guilty here.
 
 
 23
 Larry Wallace argues that no evidence contradicts his statement that he was sleeping in the back of the van at all relevant times. Mrs. Heathcott, however, testified that she saw three men transferring articles between the gray car and the blue van outside her apartment. Both bank employees testified to the presence of two bank robbers inside the bank, a circumstance consistent with a third man serving as driver. Officer Curry testified that Larry Wallace appeared to be hiding, not asleep, in the rear of the van. The F.B.I. agent testified that during interrogation Larry Wallace claimed "I'll worm my way out of this one...."
 
 
 24
 As to Fred Wallace, bank employee Diane Warren testified that the shoes worn by Mr. Wallace when he was arrested were "very, very similar" to those worn by one of the two bank robbers. Soon after his arrest, Fred Wallace gave an exculpatory statement that, according to his later testimony in court, was totally false. The coup de grace for both Wallaces, of course, was their presence in the van with Mr. Bryant and the stolen money only minutes after the robbery.
 
 
 25
 Larry Wallace challenges the propriety of his sentence, contending that the district court erred in enhancing his offense level four levels pursuant to U.S.S.G. § 2B3.1(b)(2)(b) for the use of a firearm during the commission of the bank robbery and in refusing to decrease his offense level under U.S.S.G. § 3B1.2 because he was a minimal or minor participant. Factual determinations made by the district court for sentencing purposes may be set aside on appeal only if clearly erroneous. United States v. Davis, 948 F.2d 1033, 1036 (6th Cir.1991), cert. denied, 112 S.Ct. 1279 (1992). Although the jury was unable to find beyond a reasonable doubt that Larry Wallace had used a firearm in the commission of the bank robbery, co-defendant Tony Bryant was convicted on that count. The guidelines make it clear that the reasonably foreseeable actions of those with whom one commits a crime are properly considered "relevant conduct." See U.S.S.G. § 1B1.3(a)(1) and the accompanying Commentary. Accordingly, and because a preponderance of the evidence supports the determinations made by the district court with respect to the firearm and Larry Wallace's role in the offense, the challenge to the sentence fails.
 
 
 26
 We having carefully considered the defendants' other assignments of error, and we find each of them to be without merit.
 
 
 27
 AFFIRMED.