**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Dennis L. DANIELS, Defendant–
Appellant.**

**No. 90–4061.**

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 9, 1991.

Decided Nov. 7, 1991.

Salvador Domingez (argued and briefed), Office of the U.S. Atty., Columbus, Ohio, for plaintiff-appellee.

Harry R. Reinhart (argued and briefed), Columbus, Ohio, for defendant-appellant.

Before MARTIN and NELSON, Circuit Judges; and JARVIS, District Judge.*

PER CURIAM.

This is an appeal from a conviction and sentence for damaging a motor vehicle with reckless disregard for human life, in violation of 18 U.S.C. §§ 33 and 2, and for using a firearm during a crime of violence, in violation of 18 U.S.C. §§ 924(c) and 2. The defendant argues, among other things, that the district court erred (1) in admitting evidence of uncharged misconduct pursuant to Rule 404(b), Fed.R.Evid., (2) in applying § 2A2.2 of the Sentencing Guidelines with respect to the violation of 18 U.S.C. § 33, and (3) in failing to grant a downward departure based upon the defendant's role in the offense. Because we find none of these contentions persuasive, and because we find the defendant's other arguments to be without merit, we shall affirm the conviction and the sentence imposed by the district court.

I

Defendant Dennis L. Daniels, a resident of Columbus, Ohio, was an employee of Greyhound Bus Lines. He was also a member of a labor union that was engaged in an acrimonious dispute with Greyhound. In March of 1990, after the union had declared a strike, Mr. Daniels met his girlfriend, Cathy Jenson, and her friend, Marcia Phipps, for lunch. Ms. Jenson spotted a revolver in the defendant's car and asked him what he was doing with a gun. Mr. Daniels told her, according to testimony presented at trial, "[d]on't worry about it. You'll read it in the paper."

After they arrived at the restaurant, Mr. Daniels asked Ms. Phipps what county she lived in. When Ms. Phipps, who had recently moved to the Columbus area, answered "I think it's Franklin County," the defendant responded, "Oh, well, we are wanting somebody from Madison County or a county outside of Franklin County to call in a bomb threat." Ms. Phipps then asked, "Call in a bomb threat? To whom?" The defendant answered, "Greyhound."

On March 9, 1990, a car identified as the defendant's approached a Greyhound bus en route from Columbus to Cincinnati.[1] The car was occupied by two individuals, at least one of whom fired shots at the bus.

The defendant was subsequently named in a two-count indictment charging him with (1) damaging a motor vehicle with a reckless disregard for the safety of human life, in violation of 18 U.S.C. §§ 33 and 2, and (2) using a firearm during a crime of violence, in violation of 18 U.S.C. §§ 924(c) and 2. After a three-day trial a jury returned a verdict of guilty on both counts.

A presentence report prepared by a probation officer recommended the following. With respect to Count One, the probation officer set the defendant's base offense level at 6, pursuant to U.S.S.G. § 2K1.4, a section entitled "Arson; Property Damage By Use of Explosives." The officer also recommended an 18-level enhancement, pursuant to § 2K1.4(b)(1), because the defendant's actions created a substantial risk of death or serious bodily injury. Based on

---

* The Honorable James H. Jarvis, United States District Judge for the Eastern District of Tennessee, sitting by designation.

1. Although the witnesses' recollections varied as to the type of car involved, there was testimony that it was a dark Trans Am with license plate number 117 VFX or 114 VFX. The defendant admitted at trial that his car was a black Trans Am with license plate number 114 VFZ.

a total offense level of 24 and a criminal history category of I, the officer recommended a sentencing range of 51–63 months for Count One. With respect to Count Two, the officer noted that 18 U.S.C. § 924(c) required a mandatory consecutive sentence of five years.

The district court rejected the portion of the presentence report relating to Count One. While noting that the Statutory Index listed § 2K1.4 (the section used by the probation officer) and § 2B1.3 (relating to property damage or destruction) as the relevant sections for a violation of 18 U.S.C. § 33, the court concluded that a more appropriate section would be § 2A2.2, entitled "Aggravated Assault." Applying this section to the facts at hand, the court set the defendant's base offense level at 15, imposed a two-level enhancement on the ground that the assault involved more than minimal planning, and imposed a second two-level enhancement because at least one of the passengers had sustained a bodily injury. Based on a total offense level of 19 and a criminal history category of I, the court set the sentencing range at 30–37 months. The court then sentenced the defendant to 30 months, the bottom of the range, to run consecutively with the five-year sentence required for Count Two. This appeal followed.

## II

■ The defendant contends that the district court misapplied Rule 404(b), Fed. R.Evid., when it allowed Ms. Phipps and Ms. Jenson to testify about the plan to call in a bomb threat against Greyhound. We note that a trial judge's evidentiary decisions will not normally be reversed absent a clear showing of abuse of discretion. *United States v. Hickey,* 917 F.2d 901, 904 (6th Cir.1990).

Rule 404(b) provides as follows:
"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes,

such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
As we have noted elsewhere, this rule "is actually a rule of inclusion rather than exclusion, since only one use is forbidden and several permissible uses of such evidence are identified." *United States v. Blankenship,* 775 F.2d 735, 739 (6th Cir. 1985); accord J. Weinstein and M. Berger, 2 *Weinstein's Evidence* ¶ 404[08], at 404–52 (1990) ("Only one series of evidential hypotheses is forbidden in criminal cases by Rule 404: a man who commits a crime probably has a defect of character ... [and] is more likely than men generally to have committed the act in question.").

In the case at bar, the defendant's lunchtime conversation about a bomb threat was not offered to prove that he acted in conformity with his character; rather, it was offered to show that he possessed a specific intent to cause trouble for Greyhound during the strike. The existence of such an intent would obviously help establish the defendant's identity as the person who committed the offense with which he was charged. The district court's decision to admit the evidence does not represent a clear abuse of discretion.

## III

■ The defendant also maintains that the district court erred in applying U.S.S.G. § 2A2.2 rather than § 2B1.3 with respect to the violation of 18 U.S.C. § 33 because § 2A2.2 was not listed in the relevant portion of the Statutory Index.

The *Guidelines Manual* explains that the Statutory Index "specifies the guideline section or sections *ordinarily applicable* to the statute of conviction." U.S.S.G. Appendix A, at A.1 (emphasis supplied).[2] The manual then gives the following direction:
"If more than one guideline section is referenced for the particular statute, use the guideline most appropriate for the nature of the offense conduct charged in the count of which the defendant was

2. Unless otherwise specified, all citations to the Sentencing Guidelines are to the version of the guidelines in effect when the relevant conduct occurred.

convicted. *If, in an atypical case, the guideline section indicated for the statute of conviction is inappropriate because of the particular conduct involved, use the guideline section most applicable to the nature of the offense conduct charged in the count of which the defendant was convicted." Id.* (Emphasis supplied.)

According to the version of the index in effect on March 9, 1990, the guidelines sections "ordinarily applicable" to a violation of 18 U.S.C. § 33 were § 2K1.4—a section entitled "Arson; Property Damage By Use of Explosives," which neither party argues should be applied here—and § 2B1.3, entitled "Property Damage or Destruction (Other than by Arson or Explosives)." The latter section provided as follows:

"(a) Base Offense Level: 4

(b) Specific Offense Characteristics

(1) If the loss exceeded $100, increase by the corresponding number of levels from the table in § 2B1.1.

(2) If the offense involved more than minimal planning, increase by 2 levels.

(3) If undelivered United States mail was destroyed, and the offense level as determined above is less than level 6, increase to level 6."

The district court declined to apply this section on the ground that it did not

"take into account the fact that the defendant's actions not only caused property damage, but imperiled the lives of twenty-eight human beings. The guideline limits its focus to the dollar value of the damage, but provides no indication that it was intended to be applied to cases in which the gravamen of the offense implicated non-property interests.... Simply stated, the instant offense was a crime against the person, not a crime against property only. To adopt section 2B1.3 would trivialize the seriousness of the offense and misconstrue the purposes behind the Guideline."

Instead, the court chose to apply § 2A2.2, entitled "Aggravated Assault," which provided in pertinent part as follows:

"(a) Base Offense Level: 15

(b) Specific Offense Characteristics

(1) If the assault involved more than minimal planning, increase by 2 levels....

(3) If the victim sustained bodily injury, increase the offense level according to the seriousness of the injury:

| Degree of Bodily Injury | Increase in Level |
| --- | --- |
| (A) Bodily Injury | add 2 ...." |

We find no error on the part of the district court. Because the particular conduct involved here included a reckless disregard for human life, a circumstance not adequately taken into account by § 2B1.3, the district court properly exercised its authority under the guidelines to calculate the defendant's sentence pursuant to a more appropriate section. The propriety of the court's action is confirmed by the fact that the current version of the Statutory Index lists § 2A2.2 as an appropriate guideline for a violation of 18 U.S.C. § 33. See U.S.S.G. Appendix A, at A.3 (November 1, 1990).[3]

## IV

 The defendant also contends that the district court should have granted him a four-level downward departure for his role in the offense, pursuant to § 3B1.2(a). It is well settled, however, that the trial court's determinations in this regard enjoy the protection of the "clearly erroneous" standard of review. *United States v. Barrett,* 890 F.2d 855, 868 (6th Cir.1989).

Section 3B1.2(a) provides as follows: "If the defendant was a minimal participant in any criminal activity, decrease by 4 levels." The relevant commentary explains that this subsection

"applies to a defendant who plays a minimal role in concerted activity. It is in-

**3.** The defendant complains that the district court actually applied the current version of the guidelines. Whether or not it would have been error to do this—and 18 U.S.C. § 3553(a)(4) indicates that it would not have been error—the court's decision clearly rested upon the version in effect when the relevant conduct occurred.

tended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group. Under this provision, the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant." U.S.S.G. § 3B1.2, Application Note 1.

The commentary also explains that "the downward adjustment for a minimal participant [should] be used infrequently." *Id.*, Application Note 2.

Nothing in the record of this case suggests that the defendant had any "lack of knowledge or understanding," nor does the record indicate that his participation was sufficiently minimal to require departure as a matter of law. We therefore hold that the district court's decision to deny a downward departure pursuant to this guideline was not clearly erroneous.

### V

We have examined the defendant's remaining arguments and find them to be without merit. Accordingly, the conviction and the sentence imposed by the district court are AFFIRMED.