**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**George Robert LAMBERT,
Defendant–Appellant.**

No. 92–5112.

United States Court of Appeals,
Fourth Circuit.

Argued March 5, 1993.

Decided May 24, 1993.

James B. McIntyre, McIntyre & Collias, Charleston, WVA (Gary A. Collias, on brief), for appellant. .

Phillip Blair Scott, Asst. U.S. Atty., Charleston, WVA (Michael W. Carey, U.S. Atty.), for appellee. .

Before ERVIN, Chief Judge, PHILLIPS, Circuit Judge, and RESTANI, Judge, United States Court of International Trade, sitting by designation.

## OPINION

PHILLIPS, Circuit Judge:

George Lambert appeals the sentence he received for violating 18 U.S.C. § 33 by at-

tempting, with reckless disregard for human life, to damage a bus operated in interstate commerce. He challenges both the sentencing guideline applied by the district court and that court's refusal to permit him to withdraw his guilty plea. We affirm the court's denial of Lambert's motion for permission to withdraw his plea. Because we agree with Lambert's contention that the court applied the wrong sentencing guideline, we vacate his sentence and remand for re-sentencing.

I

On March 2, 1990, employees of Greyhound Bus Lines began a nationwide strike against their employer. As the strike wore on, the tires of several Greyhound buses were punctured by "jack rocks"[1] placed across southbound Interstate 77 in West Virginia. As a prophylactic response to this disruptive activity, the West Virginia State Police began escorting Greyhound buses along the route. Precisely a year after the strike began, on March 2, 1991, a state police trooper escorting a bus spotted someone trying to hide beneath a bridge near the highway. Lambert, a twenty-seven-year veteran driver with Greyhound, was quickly apprehended. He was arrested with a citizens' band radio in his possession, and troopers soon discovered jack rocks and related paraphernalia nearby, next to the highway.

The bus Lambert concededly sought to damage, and the sixteen passengers aboard it, escaped unharmed. All told, however, activities by Lambert and unidentified others flattened 248 bus tires and an unknown number of tires on private vehicles and police cruisers. This cost Greyhound $116,000 in losses, but no injuries were ever reported.

Initially charged with state misdemeanors, Lambert was subsequently indicted by a federal grand jury on a single violation of 18 U.S.C. § 33, attempting to damage and disable a motor vehicle with reckless disregard for human life while the vehicle was operated and employed in interstate commerce. He later agreed to plead guilty but refused to identify any of his collaborators. Though no

formal agreement was made to obtain his guilty plea, the government did make certain representations to Lambert via counsel: (1) the proper sentencing guideline for his misconduct was § 2B1.3 of the United States Sentencing Comm'n, *Guidelines Manual,* with a base offense level of four; (2) the government couldn't prove Lambert had caused any actual property loss under that provision; (3) the government couldn't prove Lambert played an "aggravating role in the offense" under § 3B1.1; and (4) the government considered Lambert's failure to identify his compatriots a factor for the court to consider in assessing whether he'd accepted responsibility for his actions under the mitigatory provisions of § 3E1.1, but agreed that his refusal to reveal them should not, standing alone, deny him that benefit.

At a plea hearing, the district court told Lambert that he faced a maximum sentence of twenty years with a fine of up to $250,000 and that his sentencing was controlled by the Sentencing Guidelines. It also warned him that, although it wouldn't be able to determine the appropriate sentence until a presentence report was completed, "so long as [the court] would impose a sentence under the statutory maximum and within the guidelines, ... such a sentence would be a lawful sentence and even if you did not like the length or harshness or severity of the [c]ourt's sentence, you could not then withdraw your plea of guilty ..." Joint Appendix at 22. Lambert, then believing on the basis of the government's representation that in spite of the statutory maximum he realistically faced a sentence of zero to no more than seven months in jail, assured the court he understood all this, then pled guilty.

The presentence report prepared by the probation officer recommended application of § 2B1.3, with enhancements of one level for attempted damage over $100 and two levels for more than minimal planning offset by a two level credit for acceptance of responsibility. This calculus yielded an adjusted offense level of five which, for a person in Lambert's criminal history category (I), pro-

---

1. "Jack rocks" are sharpened, bent nails welded together such that one always points upward when the object is at rest. They are designed to damage tires.

duced a guideline sentence of zero to six months. At a first sentencing hearing that followed, however, the district court expressed dissatisfaction with that recommendation, which it thought "woefully understate[d]" the seriousness of the offense. J.A. at 37. It cited the "great danger to life and great destruction of property" implicated by Lambert's conduct and mentioned the incident's similarity to another for which it had just imposed a much harsher sentence. J.A. at 39–41. Recognizing the potential due process and notice problems presented by its just-voiced misgivings about sentencing based on the report, the court continued the proceedings to permit Lambert's counsel and the government time to consider their positions.

At a second hearing the district court noted that it probably wouldn't depart upward in sentencing Lambert but would instead sentence him according to § 2B3.2—applicable, via a cross-reference in § 2E1.5, to certain violations of the Hobbs Act's extortion provisions, 18 U.S.C. § 1951—rather than § 2B1.3.[2] Again it continued the sentencing, allowing the probation officer to revise the presentence report accordingly and permitting counsel to respond to those revisions.

The probation officer then drafted a new presentence report which found Lambert's case an "atypical" one calling for a guideline not listed in the Statutory Index, App. A, as applicable to violations of 18 U.S.C. § 33. Predictably, the new report found § 2E1.5, covering Hobbs Act extortion violations, the most appropriate guideline. Guideline 2E1.5 refers in turn to § 2B3.2, covering extortion by force or threat of injury or serious damage, which has a base offense level of 18. Lambert objected to, among other things, the revised report's conclusions that his violation of 18 U.S.C. § 33 was atypical, that § 2B3.2 applied, and that his sentencing range was 27–33 months. The government noted its agreement with most aspects of the revised report but continued to agree with Lambert that § 2B1.3 was a more appropriate sentencing guideline than § 2B3.2. It

also argued, however, that an upward departure was warranted.

At Lambert's final sentencing hearing he sought at the outset leave to withdraw his guilty plea under Fed.R.Crim.P. 32(d), arguing that his real expectation before entry of the plea, based on the representations of all parties—government, defense counsel, and even, after the plea, the district court's own probation officer—was a sentence of zero to seven months. The government opposed the motion, arguing that no "fair and just" reason for permitting withdrawal under Rule 32(d) existed, because it had made no plea agreement with Lambert and the district court had adequately disclosed to him the consequences of his plea by mentioning the potential maximum sentence. The district court agreed with both of the government's contentions and denied Lambert's motion to withdraw his plea. It then adopted the revised presentence report that recommended sentencing under § 2E1.5 and 2B3.2, and sentenced Lambert at the bottom of the guideline imprisonment range, 27 months. It also fined him $40,000.

This appeal followed.

## II

To impose a proper sentence the district court must first "[d]etermine the applicable offense guideline section...." § 1B1.1(a). Lambert challenges the performance of that initial step here, claiming that the district court erred in sentencing him under § 2B3.2 instead of § 2B1.3. We agree.

■ The *Guidelines* require the sentencing court to "[d]etermine the offense guideline section ... most applicable to the offense of conviction (*i.e.* the offense conduct charged in the count of the indictment or information of which the defendant was convicted)...." § 1B1.2(a). We review challenges to the district court's guideline selection *de novo. United States v. Toler*, 901 F.2d 399, 402 (4th Cir.1990).

■ Guideline 1B1.2(a)'s apparently simple command can generate at least two

**2.** Guideline 2B3.2 exposed Lambert to an expected sentencing range of 27–33 months, rather than the expected range of zero to six months he

would have faced if the district court applied § 2B1.3 as the initial presentence report recommended.

difficult situations: first, the charged misconduct may be so unusual that it doesn't fall within the express terms of *any* guideline; and second, it may appear to fall under the express terms of *more than one* guideline. In the first case, the district court should apply the closest analogue, and if no sufficiently analogous guideline exists, it should sentence according to the more general guidance provided by 18 U.S.C. § 3553(b). § 2X5.1. In the second case, the district court should select from among the potentially applicable guidelines the one "most applicable." In making that selection, the district court should compare the guideline texts with the charged misconduct, rather than the statute (which may outlaw a variety of conduct implicating several guidelines) or the actual conduct (which may include factors not elements of the indicted offense). *See* § 1B1.2, comment (nn. 1, 3).

■■■ In the case at hand Lambert was sentenced under § 2E1.5, applicable to Hobbs Act extortion violations. It's clear, however, that he didn't commit extortion under the Hobbs Act. *See United States v. Enmons*, 410 U.S. 396, 93 S.Ct. 1007, 35 L.Ed.2d 379 (1973) (Hobbs Act doesn't reach uses of violence to achieve legitimate union objectives). When the charged conduct doesn't fit within the guideline's express description, that guideline can only be relied on in sentencing by analogy. But application by analogy is limited to the first of the two situations mentioned above, where no sentencing guideline fits the offense.

That's not the case here. At least one guideline, by its terms, does apply to the charged misconduct: § 2B1.3.[3] Guideline 2B1.3, listed in the Statutory Index for violations of 18 U.S.C. § 33, addresses property

damage and destruction, and all parties agreed at the outset that this guideline applied to the offense conduct. This is undoubtedly so, because the guideline's only descriptive feature is property damage, and the misconduct with which Lambert was charged certainly was designed to destroy at least one tire on a Greyhound bus. *See* § 2X1.1 (interrupted attempts generally treated as completed offenses). This is the guideline the district court should have applied.[4]

■■■ The Sentencing Guidelines replace subjective, individualized judicial assessments of the gravity of criminal conduct with formal rules in order to generate more consistent, and therefore more just, sentencing results. To make the system work, selection of the appropriate sentencing guideline must turn not on the magnitude of the real offense in the eyes of the district court but instead on the perceived similarity of the crime charged in the indictment and the guideline ultimately selected. *See* Ch. 1, Pt.A 4(a, b) (distinguishing *Guidelines Manual's* charge offense sentencing from true real offense sentencing and noting limited ways real offense characteristics come into play). Guideline 2B1.3 clearly applies to the charged conduct; no other guideline does.[5] Actual conduct remains relevant in the consideration of offense characteristics after a guideline has been chosen, in the consideration of various adjustments, and in the consideration of conduct-related departures, § 1B1.2, comment (n. 3), but the district court erred in permitting a subjective assessment of the conduct's seriousness to affect its initial choice of guideline.

---

**3.** Guideline 2B1.3's failure to consider risk to human life doesn't render it inapplicable; a guideline need not address every aspect of charged conduct.

**4.** In so holding we do not adopt Lambert's view that district courts must choose from among those guidelines listed in the Statutory Index for a particular offense. While the Commission ordinarily will have identified all the guidelines that misconduct charged under a particular statute could implicate, this might not always be the case, and the *Guidelines Manual* makes clear that the Statutory Index is advisory only.

§ 1B1.1(a) ("a listing to assist in this determination"); § 1B1.2(a) (same); App. A, intro. comment.

**5.** In the factually comparable case of *United States v. Daniels*, 948 F.2d 1033, 1034 (6th Cir. 1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1279, 117 L.Ed.2d 504 (1992), by contrast, the aggravated assault guideline (U.S.S.G. § 2A2.2) under which Daniels was sentenced probably also applied to the offense conduct because he actually fired a rifle at the bus and injured a passenger rather than attempting unsuccessfully to disable it with a jack rock.

### III

Lambert also argues that the district court abused its discretion by refusing to permit him to withdraw his guilty plea despite the fact that the court decided, after plea entry, to apply a sentencing guideline much harsher than that the probation officer, the government, and the defendant had at plea-time thought applicable.[6] We believe this contention is foreclosed by our recent en banc decision in *United States v. Lambey*, 974 F.2d 1389 (4th Cir.1992) (en banc).

■ In *Lambey*, a defendant faced essentially the same situation: confrontation at sentencing-time with a court's announced intention to impose a much more severe sentence than defendant had been led by his counsel to believe was likely. We held that under the circumstances, where defendant had been expressly informed of the maximum statutory sentence possible, that actual sentence turned on application of the Sentencing Guidelines, and that his counsel's sentencing estimates weren't binding on the court, refusal to allow withdrawal of the plea would constitute abuse of discretion only if counsel's erroneous advice amounted, as it did not there, to constitutionally ineffective assistance of counsel. *Id.* at 1394–95. While Lambert's plea-time misapprehension about the likely sentencing range here reflected not only that of his counsel but that of the prosecution and the probation officer as well, we think that *Lambey* precludes our finding an abuse of discretion here. Here as in *Lambey*, whatever his expectation and no matter how reasonable, Lambert's guilty plea was entered in the face of the same full warnings by the sentencing court that were critical in *Lambey*. Here, as in *Lambey*, there is no possibility that under the circumstances his counsel's misapprehension and resulting advice could be found constitutionally ineffective assistance of counsel. A decision by the court here that under these added circumstances just cause for plea withdrawal had been shown surely would have been well within the court's discretion. But we think *Lambey* dictates that it also lay within the court's discretion to find the cause advanced by Lambert not just enough to permit him to withdraw his plea.

### IV

For the reasons expressed in Part II above, we vacate Lambert's sentence and remand the cause to the district court for resentencing pursuant to § 2B1.3. As indicated, the district court will of course be free in resentencing to consider actual conduct as well as charged conduct in determining whether an upward departure from that guideline range might be warranted, *see* § 1B1.3 comment (n. 5) (harm threatened isn't equivalent to harm that occurred but may provide a ground for upward departure), a matter as to which we express no opinion. For the reasons expressed in Part III, we affirm the district court's refusal to allow withdrawal of the guilty plea.

SO ORDERED.

---

**6.** Lambert *does not* argue for withdrawal based on breach of any formal plea agreement with the government or the court.