**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellant,

v.

No. 95-5473

LEWIS CHARLES TERRY, JR.; CARLOS
LEE BISHOP,
Defendants-Appellees.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                          No. 95-5474

CARLOS LEE BISHOP,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                          No. 95-5478

LEWIS CHARLES TERRY, JR.,
Defendant-Appellant.

Appeals from the United States District Court
for the Western District of Virginia, at Roanoke.
James C. Turk, District Judge.
(CR-94-107-R)

Argued: April 5, 1996

Decided: June 12, 1996

Before WILKINSON, Chief Judge, MICHAEL, Circuit Judge, and BUTZNER, Senior Circuit Judge.

_____

Reversed in part, vacated in part, and remanded by published opinion. Judge Michael wrote the opinion, in which Chief Judge Wilkinson and Senior Judge Butzner joined.

_____

**COUNSEL**

**ARGUED:** Lisa J. Stark, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant. James Robert Cromwell, VOGEL & CROMWELL, L.L.C., Roanoke, Virginia, for Appellees. **ON BRIEF:** Deval L. Patrick, Assistant Attorney General, Dennis J. Dimsey, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant. Sharon Chickering, DLC TRIAL LAWYERS, P.C., Roanoke, Virginia, for Appellee Terry.

_____

**OPINION**

MICHAEL, Circuit Judge:

Because they shot at an occupied vehicle (a crime under Virginia law) while in a national forest, Lewis Charles Terry and Carlos Lee Bishop were convicted for violating the Assimilative Crimes Act, 18 U.S.C. § 13(a) (the "ACA"), and for using a firearm in connection with a crime of violence, in violation of 18 U.S.C.§ 924(c). At sentencing the district court dismissed the § 924(c) count as to both defendants on double jeopardy grounds. The government appeals the dismissal of the gun count, and the defendants cross-appeal their sentences on the ACA count. Both defendants claim that the district court erred in applying the "Aggravated Assault" guideline, see U.S.S.G. § 2A2.2(a), and Terry further claims that the court erred in failing to accord him "minor participant" status, see U.S.S.G. § 3B1.2(b).

We reverse the dismissal of the § 924(c) count, and we order that the defendants' convictions on that count be reinstated. We affirm the

2

district court's sentencing determinations on the ACA count, except for one matter. Because reinstatement of the convictions on the § 924(c) count will affect how the sentence for the ACA count is calculated, we vacate the sentences and remand for resentencing on both counts.

I.

Drunk after a successful day of turkey hunting, Terry and Bishop drove along Wildlife Road in the Jefferson National Forest, a federal reserve located in Virginia. They were in Bishop's full sized station wagon. Terry was driving and Bishop was riding in the passenger's seat. Two shotguns and one dead turkey were in the back.

Raymond Ellis drove up behind Terry and Bishop in his pickup truck. Because Wildlife Road is very narrow, Terry pulled over to let Ellis pass. As Ellis passed, Terry noticed that Ellis is black. Terry and Bishop are white. Terry said to Bishop, "Let's kill this son of a bitching nigger." Bishop reached into the back of the station wagon for his twelve-gauge shotgun. As Terry drove, Bishop loaded his gun and shot at Ellis' truck. After Bishop began shooting, Ellis accelerated in an effort to get away, but Terry sped up as well, allowing Bishop to continue to reload and shoot. Bishop admitted that he fired several times, but he was not sure of the exact number of shots. Ellis eventually escaped unharmed, but his truck required $2,869.89 worth of repairs.

A federal grand jury in the Western District of Virginia indicted Bishop and Terry on two counts. The first count charged that they "did unlawfully and maliciously shoot at an occupied vehicle, putting in peril the life of the occupant therein," in violation of Va. Code Ann. § 18.2-154, assimilated as a federal charge under the ACA, 18 U.S.C. § 13(a). The second count charged that Bishop and Terry used or carried a firearm in relation to a crime of violence, in violation of 18 U.S.C. § 924(c). Each man was convicted of both counts, Bishop upon a guilty plea and Terry after a jury trial. At the defendants' sentencing the district court (on its own motion) dismissed the § 924(c) count, holding that to convict for both counts would violate the Fifth Amendment's prohibition against double jeopardy. On the remaining

3

ACA count, Terry was sentenced to 62 months of imprisonment and Bishop to 25 months.[1]

II.

We agree with the government that conviction on both the ACA count and the gun count is not double jeopardy. Each offense contains one statutorily-mandated element that the other does not, and Congress has not expressed a clear intention that multiple punishment not be imposed. Accordingly, the district court erred in dismissing the § 924(c) count.

If Congress clearly authorizes multiple punishments for the same act or transaction, the Double Jeopardy Clause is not offended when the multiple punishments are imposed after a single trial. Albernaz v. United States, 450 U.S. 333, 344 (1981). The task, then, is to determine whether Congress intended multiple punishment to apply.

Our inquiry into Congressional intent is guided by the Supreme Court's decision in Blockburger v. United States , 284 U.S. 299 (1932). We first examine whether proof of each crime"requires proof of an additional fact which the other does not." Id. at 304. If the statutorily-defined elements of the crimes charged overlap (for example, where one crime is a lesser-included offense of the other), then a court must presume that Congress did not intend multiple punishment. Rutledge v. United States, 64 U.S.L.W. 4238, 4239 & n.6 (U.S. Mar. 27, 1996). This presumption may be overcome only if Congress has otherwise clearly indicated its desire to authorize multiple punishment. Id. at 4241; Albernaz, 450 U.S. at 338-40; Whalen v. United States, 445 U.S. 684, 692 (1980). If, however, the statutory elements of the two crimes do not overlap, then multiple punishments are presumed to be authorized absent a clear showing of contrary Congressional intent. Albernaz, 450 U.S. at 340; United States v. Allen, 13 F.3d 105, 108-09 (4th Cir. 1993).

_____

[1] Bishop testified at trial against Terry, and upon the government's substantial assistance motion under U.S.S.G. § 5K1.1, the district court departed below Bishop's guideline range of 27 to 33 months.

The district court found that the elements of the two crimes charged overlap, saying "you have to actually pick up the weapon and fire into the vehicle to be guilty of" violating the Virginia statute. But a careful examination of the statutes at issue here reveals that the district court erred in its application of Blockburger, and thereby misread Congressional intent.

The ACA provides in relevant part:

> Whoever within [the special maritime and territorial jurisdiction of the United States] is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State, Territory, Possession or District in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment.

18 U.S.C. § 13(a). In this case the federalized offense was the Virginia crime of shooting or throwing a missile at an occupied vehicle:

> Any person who maliciously shoots at, or maliciously throws any missile at or against, any . . . motor vehicle or other vehicles when occupied by one or more persons, whereby the life of any person . . . in such motor vehicle or other vehicle, may be put in peril, shall be guilty of a Class 4 felony.

Va. Code Ann. § 18.2-154 (1995 Supp.).

The second count charged was a violation of 18 U.S.C. § 924(c), which provides that a person who, "during and in relation to any crime of violence [or drug-trafficking offense] for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall" be sentenced to five years imprisonment, such sentence to run consecutively to any other sentence imposed under any other count of conviction.

In fact, the elements of the two crimes do not overlap. Section 924(c) does not require the involvement of a motor vehicle, nor does

5

it require that any person's life "be put in peril," as the Virginia statute requires. Contrary to what the district court believed, the Virginia statute does not require the involvement of a firearm, as § 924(c) requires. By its terms, the Virginia statute prohibits the shooting or throwing of "any missile" at or against an occupied vehicle. Thus, a person may violate the Virginia statute by standing on an overpass and throwing a rock at a car passing beneath. See Willis v. Commonwealth, 393 S.E.2d 405, 412-13 (Va. Ct. App. 1990); see also Highway Violence a Gratuitous Death, Virginian-Pilot & Ledger Star (Norfolk, Va.), Apr. 11, 1995, at A12 (rock); Suffolk Crime Report, Virginian-Pilot & Ledger Star (Norfolk, Va.), Nov. 10, 1994, at 22 (pumpkin); Rock-Throwing on I-66, Washington Post, Sept. 3, 1993, at B4 (rocks and bottles). Even though in this case the missile of choice was fired from a gun, for purposes of double jeopardy analysis we examine only the statutory elements to determine if the elements of the two crimes charged necessarily overlap. Blockburger, 284 U.S. at 304; Allen, 13 F.3d at 109 n.4. Because each crime charged contains an element that the other does not, the statutes pass the Blockburger test. Accordingly, we presume that Congress intended § 924(c)'s mandatory five-year consecutive sentence to be imposed here.

The burden thus falls on the defendants to overcome this presumption, a burden they have failed to carry. Section 924(c) by its terms applies to "any crime of violence . . . which [ ] may be prosecuted in a court of the United States" (emphasis supplied). Furthermore, the section also says, "Notwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person convicted of a violation of this subsection, nor shall the term of imprisonment imposed under this subsection run concurrently with any other term of imprisonment" (emphasis supplied). We have held that § 924(c) authorizes enhanced punishment for all federal crimes in which a gun is used or carried. United States v. Camps, 32 F.3d 102, 108 (4th Cir. 1994), cert. denied, 115 S. Ct. 1118 (1995); United States v. Shavers, 820 F.2d 1375, 1378 (4th Cir. 1987); see also United States v. Handford, 39 F.3d 731, 733-34 (7th Cir. 1994). And it is a federal crime to violate the ACA. See United States v. Sharpnack, 355 U.S. 286, 289-92 (1958); United States v. Press Publishing Co., 219 U.S. 1, 10 (1911); United States v. Harris, 27 F.3d 111, 115 (4th Cir. 1994).

6

The defendants argue that § 924(c)'s legislative history supports their claim that Congress clearly intended to prohibit punishment under both the ACA and § 924(c). We need not examine the legislative history, however, because the text of § 924(c) plainly authorizes consecutive punishment. "[W]hen a statute speaks with clarity to an issue, judicial inquiry into the statute's meaning, in all but the most extraordinary circumstance, is finished." Metropolitan Stevedore Co. v. Rambo, 115 S. Ct. 2144, 2147 (1995) (quoting Estate of Cowart v. Nicklos Drilling Co., 505 U.S. 469, 475 (1992)); see also Albernaz, 450 U.S. at 340-41.

The defendants rely on United States v. King, 824 F.2d 313 (4th Cir. 1987), but that case does not suggest the existence of any textual ambiguity here. In King we examined a statute, 18 U.S.C. § 3013, imposing a mandatory special assessment on any person "convicted of an offense against the United States." We held that the special assessment may be imposed for assimilated crimes only where state law authorizes "like punishment." King, 824 F.2d at 317-18. Virginia provides a penalty of two to ten years in prison for the crime of maliciously shooting at an occupied vehicle. See Va. Code Ann. § 18.2-10(d) (1995 Supp.). Therefore, so long as enhancing the defendant's sentence pursuant to 18 U.S.C. § 924(c) does not result in a total sentence greater than ten years, § 924(c) and the ACA are completely consistent with one another. United States v. Young, 916 F.2d 147, 150 (4th Cir. 1990). The parties agree that on resentencing neither defendant will face a sentence in excess of ten years. Thus, in this case § 924(c) authorizes punishment like that authorized by Virginia law.

Because punishment (and therefore conviction) on both counts was proper, the district court erred in dismissing the § 924(c) count. The convictions on that count must be reinstated.

III.

The defendants cross-appealed their sentences on the ACA count (count one), claiming that the district court improperly calculated their respective offense levels under the sentencing guidelines. We believe the district court applied the guidelines correctly with respect to count one.

7

A.

The district court applied the guideline for "Aggravated Assault" and assigned the defendants a base offense level of fifteen. See U.S.S.G. § 2A2.2(a). The defendants argue that the court instead should have applied the guideline for "Property Damage or Destruction" and assigned a base offense level of four. See U.S.S.G. § 2B1.3(a). We believe the district court applied the correct guideline.

No guideline expressly covers the crime of shooting at an occupied vehicle. When no guideline expressly covers the crime of conviction, the sentencing court must "apply the most analogous offense guideline." U.S.S.G. § 2X5.1. In determining which guideline is most analogous, the sentencing court must, as the district court did here, look to "the offense conduct charged in the count of the indictment or information of which the defendant was convicted." U.S.S.G. § 1B1.2(a).

The indictment in this case charged that the defendants "did unlawfully and maliciously shoot at an occupied vehicle, putting in peril the life of the occupant therein" (emphasis supplied). According to the Guidelines, "`Aggravated assault' means a felonious assault that involved (a) a dangerous weapon with intent to do bodily harm (i.e., not merely to frighten), or (b) serious bodily injury, or (c) an intent to commit another felony." U.S.S.G. § 2A2.2, Commentary (n.1). The Guidelines do not define the term, "Property Damage or Destruction."

The defendants argue that United States v. Lambert, 994 F.2d 1088 (4th Cir. 1993), requires that the more lenient property damage guideline be applied. There the defendant was charged with "attempting to damage and disable a motor vehicle with reckless disregard for human life while the vehicle was operated and employed in interstate commerce." Id. at 1090. We held that the property damage guideline was more analogous to the charged conduct than was the guideline actually applied, former U.S.S.G. § 2E1.5 (extortion in violation of the Hobbs Act).[2] The district court's primary error in Lambert was that, in an effort to determine the true nature and gravity of the defen-

_____

**2** This guideline is now subsumed under U.S.S.G. §§ 2B3.2 & 2B3.3.

8

dant's crime, it looked outside the conduct described in the indictment. Lambert, 994 F.2d at 1091-92. The district court here committed no such error.

In any event, we believe the indictment in this case describes conduct much more serious than simple property damage and more serious than that charged in Lambert. Here the indictment charges that the defendants acted with malice and that they actually imperiled the life of another person. We recognize that the conduct described in the indictment does not match the Guidelines' definition of aggravated assault perfectly, but a perfect match is not required. The defendants' argument fails because the conduct charged in the indictment is more like aggravated assault than like property damage or destruction. Lambert, 994 F.2d at 1092 & n.3; see also United States v. Daniels, 948 F.2d 1033, 1036 (6th Cir. 1991) (per curiam) (shooting into an occupied bus properly classified as "aggravated assault"), cert. denied, 503 U.S. 912 (1992). The district court did not err in determining the defendants' base offense level.

B.

Terry claims the district court erred by refusing to grant him a two-point decrease in his offense level for being a"minor participant" in the crime. See U.S.S.G. § 3B1.2(b). He claims he is entitled to an offense level decrease because he merely drove and never fired a shot. We affirm the district court's refusal to adjust Terry's offense level.

"For purposes of § 3B1.2(b), a minor participant means any participant who is less culpable than most other participants." U.S.S.G. § 3B1.2, Commentary (n.3). A denial of a decrease in offense level on the basis of the defendant's "minor participant" status will be upheld unless the district court's decision was clearly erroneous. See United States v. Madera-Gallegos, 945 F.2d 264, 269 (9th Cir. 1991); United States v. Palinkas, 938 F.2d 456, 460 (4th Cir. 1991). The district court's finding that Terry was not a minor participant is supported in the record. Bishop testified at Terry's trial that it was Terry's idea to chase Ellis, and Terry's decision to keep driving allowed Bishop to continue to shoot. Furthermore, we have held that it is not clearly erroneous to refuse a "minor participant" adjustment for a defendant whose only involvement in the criminal activity

9

charged was to drive his confederates to and from the scene of the crime while knowing of their plans. United States v. Sharp, 927 F.2d 170, 176 (4th Cir.), cert. denied, 502 U.S. 844 (1991). We do not believe the district court clearly erred in finding that Terry's role was not minor.

IV.

The district court increased the defendants' offense levels by five pursuant to U.S.S.G. § 2A2.2(b)(2)(A) (discharge of a firearm in connection with aggravated assault). Given our ruling in part I that the firearms count must be reinstated, the five-level enhancement may not be applied to the ACA count. When a consecutive five-year sentence is imposed pursuant to 18 U.S.C. § 924(c)"in conjunction with a sentence for an underlying offense, any specific offense characteristic for the possession, use, or discharge of an explosive or firearm . . . is not to be applied in respect to the guideline for the underlying offense." U.S.S.G. § 2K2.4, Commentary (n.2).

V.

The order of the district court dismissing count two of the indictment is reversed, and the convictions on that count will be reinstated. The defendants' sentences on count one of the indictment are vacated, and the case is remanded for resentencing on both counts.

REVERSED IN PART, VACATED IN PART, AND REMANDED

10