# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
　　　　　　*Plaintiff-Appellee,*

v.

GARY D. FINLEY,
　　　　　　*Defendant-Appellant.*

No. 07-4690

Appeal from the United States District Court
for the Eastern District of Virginia, at Newport News.
Jerome B. Friedman, District Judge.
(4:07-cr-00011-JBF)

Argued: March 18, 2008

Decided: June 30, 2008

Before NIEMEYER and SHEDD, Circuit Judges, and
Irene M. KEELEY, United States District Judge for the
Northern District of West Virginia, sitting by designation.

---

Affirmed by published opinion. Judge Niemeyer wrote the opinion,
in which Judge Shedd and Judge Keeley joined.

---

## COUNSEL

**ARGUED:** Larry Mark Dash, OFFICE OF THE FEDERAL PUBLIC
DEFENDER, Norfolk, Virginia, for Appellant. Dee Mullarkey Ster-
ling, OFFICE OF THE UNITED STATES ATTORNEY, Norfolk,
Virginia, for Appellee. **ON BRIEF:** Michael S. Nachmanoff, Federal
Public Defender, Alexandria, Virginia, for Appellant. Chuck Rosen-
berg, United States Attorney, Alexandria, Virginia, for Appellee.

**OPINION**

NIEMEYER, Circuit Judge:

In the early afternoon of January 30, 2007, U.S. Army civilian police officers arrested Gary Finley on the grounds of the Fort Monroe Army Post in Hampton, Virginia, for driving under the influence of alcohol. Finley thereafter pleaded guilty to "knowingly driving or operating a motor vehicle while under the influence of alcohol, third offense within ten years," in violation of Virginia Code Ann. §§ 18.2-266 and 18.2-270(C)(1), and to "driving a motor vehicle on a highway while [his] operator's license was suspended and/or revoked," in violation of Virginia Code Ann. § 46.2-301, both as assimilated into federal law by the Assimilative Crimes Act, 18 U.S.C. § 13. Because of the circumstances of the crime and Finley's extensive history of alcohol abuse, the district court sentenced him to 27 months' imprisonment.

Finley now appeals his sentence, contending that it is unreasonable because (1) the district court refused to consider adequately the sentence recommended by Virginia's sentencing guidelines and (2) the sentence was, in any event, "far too long."

For the reasons that follow, we affirm.

I

At approximately 12:45 p.m. on January 30, 2007, Gary Finley, working as a food delivery driver, drove a Toyota pickup truck onto the Fort Monroe Army Post in Hampton, Virginia. While checking Finley's identification at the security gate, the gate officer noticed a strong smell of alcohol emanating from Finley and called his supervisor for assistance. The supervisor too detected the odor of alcohol and called the Fort Monroe Military Police desk for assistance.

Two U.S. Army civilian police officers responded, and Officer David Head asked Finley for his driver's license. Finley replied that it had been suspended for failure to pay fines. As Officer Head also noted that Finley smelled strongly of alcohol, he asked Finley to exit

the truck, and Finley did so, using the truck's door for support. Officer Head also noticed that Finley's face was flushed. Finley agreed to perform some field sobriety tests and failed every one. He then consented to a preliminary breath test which indicated a blood alcohol concentration of .32, four times Virginia's legal limit of .08. *See* Va. Code Ann. § 18.2-266. Officer Head administered the test again to assure the accuracy of the result, and the second test indicated a blood alcohol concentration of .31. The officers escorted Finley to the police station, where Finley consented to provide a breath sample for testing on an Intoxilyzer machine. After thirty minutes of observation, Finley provided the breath sample, which registered an alcohol content of .25 grams per 210 liters of breath, still more than three times Virginia's legal limit. A review of Finley's driving record revealed that he had twice previously been convicted of driving under the influence of alcohol ("DUI"), once in July 1997 (for an offense committed in May of that year) and once in March 2003 (for an offense committed in November 2002).

Finley pleaded guilty without the benefit of a plea agreement to the charges of driving under the influence of alcohol for the third time in ten years and of driving on a suspended license. His presentence report stated that "[t]his [was] a non-guidelines case" under federal law because the offenses of conviction were assimilated from state law and there were no analogous federal sentencing guidelines. It also indicated that the minimum and maximum sentences under Virginia law for the offenses were 90 days to five years' imprisonment for the third DUI offense within ten years and up to one year's imprisonment for driving with a suspended license.

At sentencing, Finley argued that because the Assimilative Crimes Act requires that a defendant be "subject to a like punishment," referring to what he would have faced in state court for the same conduct, it was "appropriate" for the district court to know and consider what Virginia's sentencing guidelines would be for his offenses. Finley's counsel represented that Virginia's sentencing guidelines range "would have been between one day and six months with a mandatory minimum of 90 days." The district court responded that it "could care less what the guidelines [were] in the state system," but noted that for each of Finley's DUI convictions he was sentenced under state law to six months in jail, suspended. The court also noted that in 2004,

Finley's second six-month sentence was reinstated because Finley failed to comply with the alcohol treatment program mandated as a condition of the suspended sentence, and, notwithstanding that he fully served that prison term, he continued to display a disregard for the law and an inability to refrain from driving under the influence. The district court rejected Finley's argument that the state guidelines should carry significant weight and sentenced Finley to 27 months' imprisonment.

Finley now appeals his sentence, contending that it was unreasonable.

## II

Finley advances a two-pronged attack on the reasonableness of his sentence: one based on procedural error that "the district court did not adequately consider the disparity between the sentence it imposed . . . and the sentence recommended under [Virginia's] guidelines" and the other based on substantive unreasonableness that the sentence is "far too long." *See Gall v. United States*, 128 S. Ct. 586, 597 (2007).

As an overarching preliminary issue, however, the government asserts that while our review of a sentence for which the Sentencing Guidelines provide a recommended sentence is for "reasonableness," *see Gall*, 128 S. Ct. at 594, our review of a sentence for which there is no recommended sentencing guideline is for whether the sentence was "plainly unreasonable," as stated in 18 U.S.C. § 3742(a)(4) and applied in *United States v. Crudup*, 461 F.3d 433 (4th Cir. 2006). We address this issue first.

In *Crudup*, we held that the Sentencing Commission issued no sentencing guideline for a sentence imposed on revocation of supervised release, even though the Commission did issue policy statements relating to such sentencing, and therefore that 18 U.S.C. § 3742(a)(4) applied to limit the defendant's *appeal* of such a sentence to a claim that the sentence was "plainly unreasonable." 461 F.3d at 435-36. We also held that if the defendant's *appeal* of a sentence for which there was no sentencing guideline is limited to sentences that are "plainly unreasonable," our *review of the sentence*, likewise, is for whether the sentence was "plainly unreasonable." *Id.* at 436-37.

Thus, the government argues in this case that just as *Crudup* applied the "plainly unreasonable" review standard for sentences on revocation of supervised release for which there was no sentencing guideline, we should apply the "plainly unreasonable" standard for review of assimilated crimes for which there is no sentencing guideline. We agree.

We begin with some background. Even though assimilated crimes are derived from state law, they become federal law under 18 U.S.C. § 13. Likewise, even though the range of sentence for an assimilated crime is derived from state law, sentencing itself is conducted under federal law. As 18 U.S.C. § 3551 provides, "a defendant who has been found guilty of an offense described in any Federal statute, including section[ ] 13 [the Assimilative Crimes Act] . . . , shall be sentenced in accordance with the provisions of this chapter so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2) to the extent that they are applicable in light of all the circumstances of the case." Therefore, as a general proposition, "[t]he sentencing guidelines apply to convictions under 18 U.S.C. § 13 (Assimilative Crimes Act)." U.S.S.G. § 2X5.1 cmt. bkgrd.

When an assimilated state offense resembles conduct for which a sentencing guideline for a federal offense has been promulgated, the Sentencing Guidelines provide that "the most analogous offense guideline" should be applied. U.S.S.G. § 2X5.1; *see, e.g.*, *United States v. Calbat*, 266 F.3d 358, 362-63 (5th Cir. 2001) (applying "aggravated assault" guideline to an Assimilative Crimes Act conviction for "intoxication assault"); *United States v. Queensborough*, 227 F.3d 149, 152 n.2 (3d Cir. 2000) (applying "criminal sexual abuse" guideline to an Assimilative Crimes Act conviction for "aggravated rape"); *United States v. Terry*, 86 F.3d 353, 357-58 (4th Cir. 1996) (applying "aggravated assault" guideline to an Assimilative Crimes Act conviction for "shooting at an occupied vehicle"). But when "there is not a sufficiently analogous guideline, the provisions of 18 U.S.C. § 3553 shall control." U.S.S.G. § 2X5.1; *see, e.g.*, *United States v. Reyes*, 48 F.3d 435, 438 (9th Cir. 1995) (finding no analogous federal guideline for the state offense of driving without a license).

In this case, both Finley and the government agree that U.S.S.G. § 2X5.1 applies and that "there is not a sufficiently analogous guide-

line" from which to derive a recommended federal offense guideline. Thus, the parties agree that the provisions of 18 U.S.C. § 3553 control directly, without any need to consider a sentence recommended by the Sentencing Guidelines. The government thus reasons that because there is no sufficiently analogous guideline, the provisions of 18 U.S.C. § 3742(a)(4), as construed by *Crudup*, apply to impose a "plainly unreasonable" standard of review for the sentence. Finley contends to the contrary — that § 3472(a)(4) does not apply because U.S.S.G. § 2X5.1 itself is an applicable sentencing guideline.

Our agreement with the government's position is based on two reasons. First, the text of U.S.S.G. § 2X5.1 compels the conclusion that § 2X5.1 is not itself a "sentencing guideline" for purposes of 18 U.S.C. § 3742. Section 2X5.1 instructs a sentencing court to "apply the most analogous offense guideline" to the offense of conviction, and "[i]f there is *not* a sufficiently analogous guideline" (emphasis added), it provides that the statutory provisions of 18 U.S.C. § 3553 "control." In other words, § 2X5.1 is not itself an "offense guideline" because it does not describe any particular offense nor yield any particular guideline range. Instead, it directs a court either to use an analogous offense guideline if one exists, or to rely on statutory provisions of § 3553 in the absence of an appropriate offense guideline. Simply, therefore, if "there is not a sufficiently analogous guideline," U.S.S.G. § 2X5.1, "there is no sentencing guideline," 18 U.S.C. § 3742(a)(4).

Second, in *Crudup* we construed § 3742(a)(4) to be applicable to sentences imposed on revocation of supervised release, as no sentencing guideline was provided, even though the Sentencing Guidelines did deal with violations of supervised release and contained policy statements for imposing sentences on revocation of supervised release. *See Crudup*, 461 F.3d at 435-36. We conclude that U.S.S.G. § 2X5.1, directing the court on which law to apply for assimilated crimes, is substantially analogous in function to policy statements and directions for sentencing defendants on revocation of their supervised release. Thus, just as we held in *Crudup* that no "sentencing guideline" was provided for sentences imposed upon revocation of supervised release, so too do we hold here that no sentencing guideline is provided for the assimilated crimes in this case.

In sum, when there is not a sufficiently analogous guideline for the assimilated offense of conviction, § 3742(a)(4) applies to limit the defendant's *appeal* to sentences that are "plainly unreasonable," and *Crudup* similarly narrows *our review* of those appeals. The "plainly unreasonable" standard that we apply in this case is but one form of the broader class of reasonableness standards recognized for review of sentences by the Supreme Court in *United States v. Booker*, 543 U.S. 220 (2005). As the Court there stated, "'Reasonableness' standards are not foreign to sentencing law. The [Sentencing] Act has long required their use in important sentencing circumstances — both on review of departures, *see* 18 U.S.C. § 3742(e)(3) (1994 ed.), and on review of sentences imposed where there was no applicable Guideline, *see* §§ *3742(a)(4)*, (b)(4), (e)(4)." *Booker*, 543 U.S. at 262 (emphasis added).

Finley argues that *Crudup* is distinguishable because it applied the "plainly unreasonable" standard to a sentence imposed on revocation of supervised release, rather than to an original sentence imposed for "actual criminal conduct." *See Crudup*, 461 F.3d at 437-39. While *Crudup* did apply the § 3742(a)(4) standard for review of sentences imposed on revocation of supervised release, it did not limit its holding to only such sentences. Nor could it have, for the statutory language contains no such limitation. *Crudup* was simply justifying application of § 3742(a)(4) to a sentence on revocation, explaining why it made sense to afford district courts greater discretion in imposing such sentences than in imposing sentences for "actual criminal conduct." *Crudup* recognized that review of a revocation sentence necessarily involves a more "deferential appellate posture" because the district court has "broad discretion" in imposing the sentence and because there is no sentencing guideline to serve as the starting point of the court's determination of the appropriate sentence. *Id.* at 439; *cf. Gall*, 128 S. Ct. at 596 ("As a matter of administration and to secure nationwide consistency, the [Sentencing] Guidelines should be the starting point and the initial benchmark").

Similar reasoning applies to our holding here. As the Supreme Court made clear, the primary purpose of the Sentencing Guidelines, even when advisory, is to "avoid excessive sentencing disparities" because "Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity."

*Booker*, 543 U.S. at 264, 253. While *Booker* rendered the Sentencing Guidelines advisory, it nonetheless directed that we review guidelines sentencing for "unreasonableness" measured in part by the goal of minimizing disparity. *Id.* at 264-65. The Court thus did not abandon the Sentencing Guidelines' effort to "promote uniformity in the sentencing process." *Id.* at 263.

But when there is no federal guideline against which such uniformity or disparity can be ascertained, it follows that the need for appellate review is commensurately reduced. Congress recognized precisely this logical consequence when it provided a more deferential standard of review of sentences imposed for offenses "for which there is no sentencing guideline" than of sentences imposed for offenses with a particular offense guideline. *See* 18 U.S.C. § 3742(a)(4). When there is no relevant sentencing guideline, it is impossible for the Sentencing Guidelines to be "the starting point and the initial benchmark" of the sentencing process for any purpose, let alone for "administration and to secure nationwide consistency." *Gall*, 128 S. Ct. at 596. Because the district court in such cases lacks a "starting point" or "initial benchmark" under the federal system, it consequently has greater discretion in selecting an appropriate sentence that comports with the requirements of 18 U.S.C. § 3553, and we therefore will review that sentence more deferentially.

For these reasons, when we review a sentence imposed for an assimilated offense for which there is no sufficiently analogous offense guideline, we do so under the "plainly unreasonable" standard. *See Gall*, 128 S. Ct. at 597; *Crudup*, 461 F.3d at 438-39.

## III

In applying the "plainly unreasonable" standard, we first determine, using the instructions given in *Gall*, whether a sentence is "unreasonable."

> If we determine based on this review that [the district court's] sentence is not unreasonable, the sentence should be affirmed. In such a circumstance, we do not proceed to the second prong of our review because it necessarily follows that a sentence that is not unreasonable is also not plainly

unreasonable. However, if we determine that the revocation sentence is procedurally or substantively unreasonable, we must then decide whether the sentence is *plainly* unreasonable, relying on the definition of "plain" that we use in our "plain" error analysis. Thus, for purposes of determining whether an unreasonable sentence is plainly unreasonable, "[p]lain" is synonymous with "clear" or, equivalently, "obvious."

*Crudup*, 461 F.3d at 439 (internal quotation marks omitted) (second alteration in original). In this case, therefore, we begin by determining whether Finley's sentence is unreasonable, and only if we conclude that it is unreasonable do we proceed to consider the question of whether it is "plainly unreasonable."

For his arguments that his sentence is unreasonable, Finley contends first that the district court committed "procedural error" because it "did not adequately consider the disparity between the sentence it imposed" and "the sentence recommended under the [Virginia] state guidelines." He argues that the district court thus "failed to consider the requirements of 18 U.S.C. § 3553" insofar as it ignored the command of § 3553(a)(6) to "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

First, we must point out that the record reveals that Finley overstates the district court's lack of consideration, as well as the alleged unwarranted disparity between a sentence that would be imposed under the Virginia guidelines and the one imposed by the district court in this case.

At sentencing, Finley's attorney represented to the district court that the applicable Virginia sentencing guideline "would have been between one day and six months with a mandatory minimum of 90 days."\* While his attorney recognized that there is a wide discrepancy

---

\*As it turns out, counsel for Finley erroneously reported the state guidelines to the district court and conceded on appeal that in fact the state guidelines called for a sentence of between seven and ten months' imprisonment.

in the sentences that judges in Virginia actually give — as the state guidelines are entirely discretionary and not subject to appellate review — the attorney indicated that the state guidelines should at least be considered, and when considered, the district court should sentence Finley to "a period of six months' [incarceration] with six months of either home detention or community confinement." While the court responded that it appreciated the argument but "frankly . . . could care less what the guidelines [were] in the state system," it later explained how sentencing under the state guidelines provided no deterrence to Finley. The court also repeated to Finley's attorney how it "appreciate[d] knowing what the [Virginia] guidelines [were]."

But that did not end the district court's consideration of Virginia's guidelines. Addressing more broadly the reasons for imposing the 27-month sentence, the district court noted that the state sentences Finley had received in the past had been suspended and that Finley had not served any time until he violated the terms of his probation, where-upon he served six months. Moreover, the court observed that the six-month sentence he served also did not deter Finley, because he con-tinued driving under the influence of alcohol. After reviewing a his-tory of Finley's conduct and sentences in state court, the district court explained its ultimate refusal to apply the state's discretionary guide-lines:

> I have to consider the kinds of sentences available. We all know what that is because we look at the state statutes. I can't tell you about the need to avoid unwarranted sentenc-ing disparities among defendants with similar records who have been found guilty of similar offenses. You have been kind enough and I appreciate telling me what the state guidelines are. We don't have federal guidelines in this par-ticular case.

At bottom, the court concluded that the previous six-month sentences Finley received had not been sufficient and that the court needed to impose a sentence that would change Finley's behavior and protect the public.

But we do not reject Finley's argument solely because the district court did indeed consider the state guidelines. We also conclude that

Finley misreads the command of the Assimilative Crimes Act and its role in federal sentencing. That Act provides that a person who is guilty of committing any act punishable under state law while he is in the state but subject to the "special maritime and territorial jurisdiction" of the United States, "shall be guilty of a *like offense* and subject to a *like punishment*" under federal law. 18 U.S.C. §§ 7, 13(a) (emphasis added). We have held that "like punishment," as used in the Assimilative Crimes Act, does not require that the punishment be identical but only that sentences in federal court for assimilated crimes "fall within the minimum and maximum terms established by state law." *United States v. Young*, 916 F.2d 147, 150 (4th Cir. 1990); *see also United States v. Pierce*, 75 F.3d 173, 176 (4th Cir. 1996). Within that range, federal courts have discretion in imposing sentences as regulated by federal law. *Id.* Thus when 18 U.S.C. § 13 assimilates state crimes, it not only incorporates the definition of criminal conduct but also "subjects" the defendant to the sentencing range imposed by the state for the conduct.

The DUI offense in this case — driving a motor vehicle while under the influence of alcohol for the third time within ten years, in violation of Va. Code Ann. §§ 18.2-266 and 18.2-270(C)(1) — provides for a minimum term of imprisonment of 90 days and a maximum term of five years' imprisonment. The district court, exercising discretion conferred by federal law, sentenced Finley to 27 months' imprisonment, a sentence falling below the midpoint of the state-prescribed range. Because it fell within the state-prescribed range, it was also consonant with the Assimilative Crimes Act's "like punishment" requirement.

Finally, even if we were to accept Finley's argument that the district court should have applied, or more "adequately consider[ed]," Virginia's sentencing guidelines, he would be faced with the fact that those guidelines are entirely discretionary, and deviations from them are not reviewable on appeal. *See* Va. Code Ann. § 19.2-298.01.

In sum, we conclude that the district court did not commit any procedural error so as to justify a finding of unreasonableness under *Gall*.

IV

Finley also contends that his 27-month sentence is substantively unreasonable because it is "far too long" for a third DUI offense

within ten years, particularly when compared to his likely sentence in state court. He notes that the mere happenstance of driving onto federal property should not warrant such a lengthy sentence and that the first of his three DUI convictions was "nearly ten years old" such that, had the instant offense occurred in May 2007 instead of January 2007, it would have been a misdemeanor subject to a one-year maximum sentence. In addition, he argues that the district court "provided little basis for the excessive length" of his sentence, claiming that his sentence was "greater than necessary" to meet the goals of federal sentencing under 18 U.S.C. § 3553(a).

First, to the extent that Finley's challenge to the substantive reasonableness of his sentence is a repackaging of his procedural objection that the district court failed adequately to consider the state guidelines, we have already rejected this argument. Second, the fact that Finley entered a federal enclave does not by itself render his sentence unreasonable when the sentence was well within, indeed below the midpoint of, the range of punishment authorized by state law. Third, we are not empowered to rewrite Virginia's statute criminalizing a third DUI within ten years so that it applies only to defendants with three DUIs within nine and one-half years. In short, none of these objections demonstrate that his sentence was unreasonable.

As for Finley's contention that the district court "provided little basis" under 18 U.S.C. § 3553(a) for the sentence it selected, the record indicates the contrary. The transcript of the sentencing proceeding includes five full pages of reasons why, under § 3553(a), the district court selected the particular sentence.

The court began with Finley's criminal history and the leniency that he had repeatedly received in the past, noting that he received a suspended six-month sentence for his first DUI; a suspended six-month sentence for a hit-and-run offense; and a suspended six-month sentence for his second DUI. Finally, it noted that Finley served six months in jail for failing to comply with his mandatory alcohol treatment program. Following this recitation, the court observed:

> So here we have a person who, in the middle of the day, has
> a blood alcohol count of over .20. Admittedly drinks more

beers than most people drink in a month probably, unless they really like to drink beer, in a day. He's an alcoholic.

While recognizing that alcoholism is a sickness, the court pointed out that this fact does not diminish the fact that Finley was "a danger to everyone who drives." Then addressing the need for a sentence to punish and incapacitate, the court pointed to the failure of prior punishment and the necessity for greater punishment, especially for the protection of the public:

> Taking his license away doesn't seem to mean anything because he's had a suspended license but he still gets behind the wheel, and thank goodness he hasn't, you know, caused some serious injury or death to someone.
>
> \*     \*     \*
>
> He's told not to drive. He still drives. He has a .25 in the middle of the afternoon. That really is a concern to me. Not that a .25 wouldn't concern me at 12 o'clock at night, but to have it in the middle of the afternoon is very disconcerting to the Court.

The court then summarized its application of 18 U.S.C. § 3553(a):

> I have to consider the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, which he has none because he continues to drive when his license has been suspended, and, of course, he continues to drive while he's intoxicated; to provide just punishment; to afford adequate deterrence; and to protect the public. Now, that's the thing that concerns me the most. He's had chance after chance after chance and he continues to do what he's not supposed to do which is something very, very dangerous. So what I have to do is to do the best I can to protect the public.

In short, Finley totally overlooks the district court's comprehensive analysis of § 3553(a) which included Finley's criminal history, *see* 18

U.S.C. § 3553(a)(1); the seriousness of driving under the influence as "a danger to everyone who drives," *see id.* § 3553(a)(2)(A); his ongoing lack of respect for the law as evidenced by his repeated drinking and driving, even on a suspended license, *see id.*; the need to deter future criminal conduct, *see id.* § 3553(a)(2)(B); and the need to protect the public from Finley, who has "had chance after chance after chance and he continues to do what he's not supposed to do which is something very, very dangerous," *see id.* § 3553(a)(2)(C). The court concluded its detailed analysis by recognizing that it had the discretion and the responsibility "to do what I think is right in this particular case," and the court determined that the appropriate sentence was a significant term of imprisonment, coupled with substance abuse treatment while incarcerated.

In determining the reasonableness of a sentence, we "give due deference to the district court's decision," *Gall*, 128 S. Ct. at 597, and for the reasons given, we conclude that Finley's sentence was not unreasonable in light of the § 3553(a) factors.

Because we have concluded that the district court's sentence was neither procedurally erroneous nor substantively unreasonable, as those standards are articulated in *Gall*, we need not proceed to the secondary question of whether Finley's sentence was "*plainly* unreasonable," the standard applicable here. *See Crudup*, 461 F.3d at 439.

The judgment of the district court is

*AFFIRMED.*