**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

      *Plaintiff-Appellee,*

v.

JAMES BERNARD BENNETT, JR.,

      *Defendant-Appellant.*

No. 11-4401

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
James C. Dever III, District Judge.
(5:05-cr-00010-D-1; 5:08-cr-00068-D-1)

Argued: September 19, 2012

Decided: October 25, 2012

Before WILKINSON and THACKER, Circuit Judges,
and Michael F. URBANSKI, United States District Judge
for the Western District of Virginia,
sitting by designation.

Affirmed by published opinion. Judge Wilkinson wrote the
opinion, in which Judge Thacker and Judge Urbanski joined.

## COUNSEL

**ARGUED:** James Edward Todd, Jr., OFFICE OF THE FED-
ERAL PUBLIC DEFENDER, Raleigh, North Carolina, for

Appellant. Kristine L. Fritz, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Thomas P. McNamara, Federal Public Defender, Stephen C. Gordon, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant. Thomas G. Walker, United States Attorney, Jennifer P. May-Parker, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

---

## OPINION

WILKINSON, Circuit Judge:

In *Tapia v. United States*, the Supreme Court held that the Sentencing Reform Act of 1984 does not permit federal courts to consider a defendant's rehabilitative needs when imposing a prison sentence or determining the length thereof. 131 S. Ct. 2382 (2011). This case presents the question whether *Tapia* applies in the context of resentencing on the revocation of supervised release. We hold that it does. Here, however, the transcript of the revocation hearing makes plain that the "egregious breach of trust" committed by the defendant in repeatedly violating the conditions of supervised release—rather than any rehabilitation rationale—drove the sentencing decision. We see no reason to direct a remand that would serve no purpose, and we accordingly affirm the judgment of the district court.

I.

The U.S. District Court for the Eastern District of North Carolina convicted defendant James Bernard Bennett, Jr., of being a felon in possession of a firearm under 18 U.S.C. §§ 922(g)(1) and 924 (the "first federal conviction"). On Janu-

ary 10, 2006, he was sentenced to fifty months of imprisonment followed by thirty-six months of supervised release. During the ensuing prison term, Bennett absconded from a halfway house. He was convicted of escape in violation of 18 U.S.C. § 751(a) (the "second federal conviction") and sentenced on March 11, 2009, to seventeen months in prison, to run consecutively with the sentence for his first federal conviction, as well as thirty-six months of supervised release, to run concurrently with the supervised release associated with his first federal conviction.

Bennett's supervised release on both convictions began on July 28, 2009. His probation officer filed a motion for revocation on October 1, 2009, and amended it on January 24, 2011, setting forth two grounds for revocation (as well as an additional ground that the government later withdrew). First, in September 2009, Bennett was arrested and charged with robbery with a dangerous weapon and possession of a firearm by a felon. He pleaded guilty in state court in January 2011 to conspiracy to commit common law robbery (the "state conviction") and was sentenced to eleven to fourteen months in custody, with credit for 450 days served. Second, Bennett tested positive for cocaine use on three occasions during September 2009.

The district court held a revocation hearing on April 5, 2011. Bennett admitted the conduct underlying the motion for revocation. The court found the imprisonment range suggested by the Sentencing Guidelines to be eighteen to twenty-four months on the revocation of the term of supervised release associated with the first federal conviction (for being a felon in possession of a firearm) and twenty-four months on the revocation of the term of supervised release associated with the second federal conviction (for escape).

The defense asked for an eighteen-month sentence on each of the two revocations, to run concurrently. Defense counsel cited Bennett's responsibilities as a father of four children, his

relative youth (at age twenty-six), his family support, and the fact that he had recently attempted—albeit unsuccessfully—to get a GED and a job. He also emphasized that Bennett had already spent fourteen months in custody on the state conviction. The government, by contrast, urged the court to impose the maximum punishment on each revocation and to run the sentences consecutively. The government drew support from the fact that Bennett had received a downward departure on the initial sentence for his first federal conviction and argued that, by engaging in criminal acts so soon after leaving prison, Bennett showed that he "has not learned his lesson and apparently has no regard for the rights of others and does not hesitate to engage in violent behavior even after serving a federal sentence."

The district court sentenced Bennett to twenty-four months in prison on each revocation, with the sentences to run consecutively (for a total of forty-eight months). The court began its explanation by declaring that "the focus of a revocation proceeding is the breach of trust associated with being on supervised release and then continuing to engage in criminal behavior"—a theme to which the judge repeatedly returned. The court also stated that "it's clear that [Bennett], based on his positive cocaine tests, needs intensive substance abuse treatment. So, the court will impose a sentence that provides ample time for that." And when imposing the sentence on the second revocation, the judge noted that the sentence was meant to "reflect the serious nature of the breach of trust, to provide ample time for substance abuse treatment." The court also recommended that Bennett "receive intensive substance abuse treatment" in prison.

## II.

### A.

Bennett argues that the district court's invocation of his need for substance abuse treatment in explaining his sentence

constitutes reversible error under *Tapia v. United States*, 131 S. Ct. 2382 (2011). The Sentencing Reform Act of 1984 generally instructs courts to consider a number of factors when imposing a sentence. *See* 18 U.S.C. § 3553(a). One of these factors is "the need for the sentence imposed . . . to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." *Id.* § 3553(a)(2)(D). At issue in *Tapia* was the proper interpretation of 18 U.S.C. § 3582(a), which provides that

> [t]he court, in determining whether to impose a term of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation.

*Tapia* held that this statute "precludes federal courts from imposing or lengthening a prison term in order to promote a criminal defendant's rehabilitation," establishing the rule that "when sentencing an offender to prison, the court shall consider all the purposes of punishment except rehabilitation— because imprisonment is not an appropriate means of pursuing that goal." 131 S. Ct. at 2385, 2389.

### B.

This court must first decide whether *Tapia*'s teaching applies to resentencing on the revocation of supervised release in addition to the context addressed by *Tapia* itself, initial sentencing on a criminal conviction. We think that *Tapia* does apply to revocation sentencing.

Most fundamentally, the text of the Sentencing Reform Act is clear: courts must "recogniz[e] that *imprisonment* is not an appropriate means of promoting correction and rehabilita-

tion." 18 U.S.C. § 3582(a) (emphasis added). To be sure, the provision governing the revocation of supervised release does not include the precise word "imprisonment," instead allowing a court to "require the defendant to serve *in prison* all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release." *Id.* § 3583(e)(3) (emphasis added). This, however, strikes us as a distinction in search of significance. "Imprisonment" is not some magic word: incarceration constitutes "imprisonment" whether imposed upon an initial conviction or upon revocation of supervised release. Indeed, "imprisonment" appears elsewhere in § 3583 to denote the latter. *See, e.g.*, *id.* § 3583(g)(4); *id.* § 3583(h); *id.* § 3583(i); *id.* § 3583(k).*

The Supreme Court endorsed this line of reasoning in *Tapia* by interpreting "imprisonment" broadly (as encompassing both the initial decision to incarcerate an offender and the subsequent decision for how long). "'Imprisonment,'" the Court specified, "most naturally means '[t]he state of being confined' or 'a period of confinement.'" 131 S. Ct. at 2389 (quoting *Black's Law Dictionary* 825 (9th ed. 2009)). These capacious definitions obviously encompass incarceration in the revocation context.

---

*The First Circuit has described a somewhat different distinction, pointing out that § 3583(e) instructs courts to look to a variety of § 3553(a) factors (including (a)(2)(D)) when taking a variety of actions relating to supervised release (terminating, extending, revoking, or modifying it) but, unlike § 3582(a), does not contain an explicit caveat not to consider rehabilitation when sentencing someone to prison. *See United States v. Molignaro*, 649 F.3d 1, 3 (1st Cir. 2011). Our result still obtains, however. Because of the synonymous nature of the relevant terms, a court's decision to sentence a defendant to a term "in prison" under § 3583(e)(3) falls under § 3582(a)'s proscription against considering rehabilitative needs when imposing "imprisonment." The *Tapia* Court's unanimous conclusion was that where actual incarceration is involved, Congress did not intend for courts to consider rehabilitation in determining the fact or length of the sentence. So long as the relevant statute refers to imprisonment, we do not think that the Court's view would shift with the context.

Moreover, *Tapia* supports this conclusion not only in language but also in logic. Beyond the text of § 3582(a), the Supreme Court found "[e]qually illuminating" the fact that "when Congress wanted sentencing courts to take account of rehabilitative needs, it gave courts the authority to direct appropriate treatment for offenders"—as in the context of sentencing to probation or to supervised release. *Id.* at 2390. By contrast, when Congress did not want courts to consider rehabilitative needs, it did not accord them binding power to order such treatment—as in the context of sentencing to imprisonment. If Congress had intended "to allow courts to base prison terms on offenders' rehabilitative needs, it would have given courts the capacity to ensure that offenders participate in prison correctional programs. . . . That incapacity speaks volumes." *Id.* at 2390-91. The First Circuit concluded that "[t]he unanimous Supreme Court's assessment of the significance of this fact about judicial authority makes it legally, and not just factually, pertinent to this case, even though *Tapia* dealt with initial sentencing, whereas resentencing [on the revocation of supervised release] is involved here." *United States v. Molignaro*, 649 F.3d 1, 4 (1st Cir. 2011).

We thus hold that *Tapia* applies to the revocation context too.

## C.

Several caveats are in order. First, our interpretation of § 3582(a) in no way compromises the ability of a district court to revoke a term of supervised release and imprison the defendant if the court "finds by a preponderance of the evidence that the defendant violated a condition of supervised release." 18 U.S.C. § 3583(e)(3). By law, the conditions of release must include the "explicit" requirements "that the defendant refrain from any unlawful use of a controlled substance" and submit to drug testing (unless an exception is warranted). *Id.* § 3583(d). Indeed, "[i]f the defendant . . . tests positive for illegal controlled substances more than 3 times

over the course of 1 year," revocation followed by imprison-
ment is *mandatory*. *Id.* § 3583(g)(4). Today's decision does
not—and could not—curtail the authority accorded district
courts by Congress under this statutory scheme.

Second, as relevant to both initial sentencing and revoca-
tion sentencing, we note that—although district courts do not
possess binding authority to order participation in prison pro-
grams, as discussed above—the sentencing judge may make
certain recommendations relevant to a defendant's rehabilita-
tive needs. As the Supreme Court explained in *Tapia*:

> A court commits no error by discussing the opportu-
> nities for rehabilitation within prison or the benefits
> of specific treatment or training programs. To the
> contrary, a court properly may address a person who
> is about to begin a prison term about these important
> matters. And . . . a court may urge the [Bureau of
> Prisons] to place an offender in a prison treatment
> program. Section 3582(a) itself provides . . . that a
> court may "make a recommendation concerning the
> type of prison facility appropriate for the defendant";
> and in this calculus, the presence of a rehabilitation
> program may make one facility more appropriate
> than another.

131 S. Ct. at 2392. Indeed, by trying to place the defendant
in an effective drug treatment program, the district court in
*Tapia* "did nothing wrong—and probably something very
right." *Id.*

*Tapia* thereby drew a line between the consideration of a
defendant's rehabilitative needs when determining the fact or
length of imprisonment—which is improper—and the consid-
eration of the same when recommending treatment options or
the location of confinement—which is altogether sound. Trial
judges should thus make plain that a defendant's rehabilitative
needs relate at most to recommended programs or locations—

not to the fact or length of imprisonment. By keeping these distinct concepts distinct, courts will preclude the possibility of confusion on appeal over whether a *Tapia* error has occurred.

## III.

### A.

Given that *Tapia* governs this case, we must determine the appropriate standard of review for assessing whether the district court committed reversible error. Our review of the record makes plain that Bennett did not object at the revocation hearing on the grounds asserted here (or on any other grounds, for that matter). This issue, therefore, was not properly preserved.

Bennett contends that he adequately objected by arguing toward the start of the hearing—long before the district court mentioned his rehabilitative needs—that the sentences on the two revocations should run concurrently. But this argument was far too general to alert the district court to the specific reason that Bennett now asserts justifies concurrent sentences —namely, that § 3582(a) forbids the use of rehabilitative needs as a determinant for the imposition or length of imprisonment. The entire purpose of an objection is to alert the district court to the actual basis of asserted error. *See* Fed. R. Crim. Pro. 51(b) ("A party may preserve a claim of error by informing the court—when the court ruling or order is made or sought—of the action the party wishes the court to take, or the party's objection to the court's action and the grounds for that objection."); *United States v. Bostic*, 371 F.3d 865, 871 (6th Cir. 2004) ("A party 'must object with that reasonable degree of specificity which would have adequately apprised the trial court of the true basis for [the] objection.'" (quoting *United States v. LeBlanc*, 612 F.2d 1012, 1014 (6th Cir. 1980)). The need for some specificity is not a meaningless ritual; rather, a clear objection can enable a trial court to correct

possible error in short order and without the need for an appeal.

By any standard, Bennett's argument for concurrent sentences did not even approach the point on which he now grounds his claim. Indeed, when the district court made what Bennett now contends were erroneous comments about his rehabilitative needs, his counsel stood silent. We therefore find that the defendant failed to preserve the objection asserted here.

## B.

Where a defendant fails to preserve his claim, he bears the burden of establishing (1) that the district court erred; (2) that the error was "plain"; and (3) that the error "affect[ed his] substantial rights," meaning that it "affected the outcome of the district court proceedings." *United States v. Olano*, 507 U.S. 725, 732, 734 (1993). Even then, this court "retain[s] discretion to deny relief," and denial is particularly warranted where it would not "result in a miscarriage of justice." *United States v. Robinson*, 627 F.3d 941, 954 (4th Cir. 2010).

Under *Olano*'s first prong, we must determine whether the district court erred, and in order to make that determination in the revocation context, this court asks whether the sentence is "plainly unreasonable." *United States v. Crudup*, 461 F.3d 433, 437 (4th Cir. 2006). Under this analysis, "we first determine, using the instructions given in *Gall [v. United States*, 552 U.S. 38 (2007)], whether a sentence is 'unreasonable.'" *United States v. Finley*, 531 F.3d 288, 294 (4th Cir. 2008). *Gall*, in turn, requires a reviewing court first to "ensure that the district court committed no significant procedural error." 552 U.S. at 51. If no such error is found, "the appellate court should then consider the substantive reasonableness of the sentence imposed." *Id.* If a sentence is held unreasonable under *Gall*, this court proceeds to "decide whether [it] is

*plainly* unreasonable." *Finley*, 531 F.3d at 294 (quoting *Crudup*, 461 F.3d at 439).

In assessing procedural accuracy, *Gall* stated that a court's "fail[ure] to consider the § 3553(a) factors" constitutes "significant procedural error." 552 U.S. at 51. It is only logical that a court's consideration of an improper § 3553(a) factor is likewise erroneous. Here, the district court contemplated a § 3553(a) factor that it was specifically prohibited from taking into account by § 3582(a)—Bennett's rehabilitative needs. This constitutes a procedural error under *Gall*.

We shall assume arguendo that the error was plain. *See Henderson v. United States*, 80 U.S.L.W. 3699 (U.S. June 25, 2012) (No. 11-9307) (granting certiorari to determine whether an error is plain where the case law is unsettled at the time of the district court proceeding but becomes clear during the appeal). We find, however, that Bennett's challenge ultimately fails because he has not carried his burden on *Olano*'s third prong. For the reasons that follow, Bennett has failed to show that the district court's putative *Tapia* error affected his substantial rights by influencing the outcome of the sentencing proceeding.

## C.

Our review of the hearing transcript makes clear that it was the brazen breach of trust inherent in Bennett's unlawful actions while on supervised release—and not the rehabilitation rationale proscribed by *Tapia*—that drove the district court's sentencing decision.

The court commenced the sentencing portion of the proceeding by confirming that Bennett conceded the conduct underlying both grounds for revocation. As for the first ground, although Bennett pleaded guilty only to conspiracy to commit common law robbery on the state conviction, the court noted that he had "admitted the criminal conduct associ-

ated with" the original and significantly more serious charges of "robbery with a dangerous weapon and possession of a firearm by a felon." On the second ground, the court observed that Bennett had "admitted to repeatedly using cocaine while on supervised release"—in fact, less than two months after leaving prison.

The court then declared that "the focus of a revocation proceeding is the breach of trust associated with being on supervised release and then continuing to engage in criminal behavior." The judge returned to this theme again and again, as demonstrated by the following statements:

- "[T]he court hoped that Mr. Bennett would do better than he had done so far, but it is what it is";

- "The court does believe that there is a serious breach of trust";

- "[I]t certainly didn't seem Mr. Bennett kind of learned too much while he was incarcerated or really had any respect for the trust the court had placed in him";

- "He'll pay the price for that egregious breach of trust today";

- "The sentence he's going to get today derives from the breach of trust";

- "[T]oday he'll be held to account for his breach of trust, the repeated breach of trust, the serious violation in connection with" his first federal conviction;

- "He didn't learn anything";

- "He breached the trust of this court";

- "[H]is conduct reflects an egregious breach of trust associated with the sentence . . . handed down" on his second federal conviction.

The judge also declared that Bennett "remains a threat."

The court did not reference Bennett's rehabilitative needs at all for the first two and one-half of the three pages of transcript encompassing the sentencing explanation. As its last point before pronouncing the second sentence (after making all of the statements listed above), the judge simply mentioned that Bennett "needs intensive substance abuse treatment" and that "the court will impose a sentence that provides ample time for that." The judge then stated that the sentence was meant both to "reflect the serious nature of the breach of trust" and to "provide ample time for substance abuse treatment." These statements comprise the sum total of any *Tapia* error. While the court also noted its recommendation that Bennett "receive intensive substance abuse treatment" while in prison, this recommendation was plainly proper under § 3582(a), as confirmed by *Tapia* and discussed above.

Thus, when properly situated within the entire sentencing proceeding, Bennett's rehabilitative needs clearly constituted only a minor fragment of the court's reasoning. By contrast, the judge made plain that the defiance demonstrated by Bennett's multiple criminal acts during his short period of relative freedom was simply staggering. The concern with this breach of trust, which both led off the discussion and bore all of its emphasis, far outweighed any other concerns and provided independent justification for the sentence.

This determination is underscored by comparing the present case with the sentencing proceeding at issue in *Tapia*. There, the district judge emphasized that "the sentence has to be sufficient to provide needed correctional treatment, and here I think the needed correctional treatment is the 500 Hour Drug Program." *Tapia*, 131 S. Ct. at 2385, 2392. The "*number*

*one*" consideration "is the need to provide treatment," the court reiterated—"[i]n other words, so [Tapia] is in long enough to get the 500 Hour Drug Program." *Id.* at 2385, 2392-93 (emphasis added). Even given these indications that the defendant's rehabilitative needs drove the length of the sentence, the Supreme Court remanded for a determination on this issue, *id.* at 2393 (remanding for the Court of Appeals to consider under *Olano* "the effect of Tapia's failure to object to the sentence when imposed"); and the two concurring Justices outlined a litany of factual considerations supporting the district court's other, deterrence-based explanation for the sentence, *id.* at 2393-94 (Sotomayor, J., concurring). The fact that it was apparently a close question in *Tapia* whether the rehabilitation rationale drove the sentencing decision—despite the prominence of that rationale—simply confirms that the answer in the present case is straightforward: it did not.

This analysis demonstrates that any *Tapia* error did not influence the outcome of the revocation hearing. Rather, the court imposed the sentence it chose because of Bennett's "egregious breach of trust," a perfectly appropriate basis—and, in fact, the principal basis on which the Guidelines encourage courts to ground revocation sentences. *See U.S. Sentencing Guidelines Manual* ch. 7, pt. A, introductory cmt. (2011) ("[A]t revocation the court should sanction primarily the defendant's breach of trust . . . ."). Bennett's challenge fails under *Olano*'s third prong, and this court therefore properly declines to order a purposeless remand where the district court does nothing more than reiterate what it has made clear all along.

## IV.

For the foregoing reasons, we affirm the judgment of the district court.

*AFFIRMED*