PUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 13-4696

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

CYNTHIA LEMON,

Defendant - Appellant.

Appeal from the United States District Court for the District of
South Carolina, at Columbia. Cameron McGowan Currie, Senior
District Judge. (3:08-cr-00004-CMC-1)

Argued: December 11, 2014            Decided: January 23, 2015

Before MOTZ and THACKER, Circuit Judges, and DAVIS, Senior
Circuit Judge.

Affirmed by published opinion. Judge Motz wrote the opinion, in
which Judge Thacker and Senior Judge Davis joined.

**ARGUED:** Katherine E. Evatt, OFFICE OF THE FEDERAL PUBLIC
DEFENDER, Columbia, South Carolina, for Appellant. Winston
David Holliday, Jr., OFFICE OF THE UNITED STATES ATTORNEY,
Columbia, South Carolina, for Appellee. **ON BRIEF:** William N.
Nettles, United States Attorney, OFFICE OF THE UNITED STATES
ATTORNEY, Columbia, South Carolina, for Appellee.

DIANA GRIBBON MOTZ, Circuit Judge:

Cynthia Lemon appeals her twenty-four month prison sentence for several violations of her supervised release. She argues that the district court committed plain error at her revocation hearing by considering her rehabilitative needs as a factor in determining the length of her sentence. For the following reasons, we affirm.

I.

The parties do not dispute the facts of this case. In 2008, Lemon pleaded guilty to conspiracy to defraud the United States by making, uttering, and possessing forged securities in violation of 18 U.S.C. § 531 and § 371. The district court sentenced her to thirty months in prison and three years of supervised release. Lemon's supervised release term began in February 2013. Five months later, she was arrested for multiple violations of her supervision, including several instances of forging checks.

Based on the nature of Lemon's violations and her extensive criminal history, the supervised release violation report provided for a Guidelines range of 21-27 months' imprisonment. Factoring in the statutory maximum reduced that range to 21-24 months. Lemon filed no objections to the report, and Lemon's

2

probation officer recommended a sentence of twenty-four months' imprisonment.

At the revocation hearing, the Government requested a sentence within the Guidelines range. Lemon's counsel requested a sentence of time served and continuation on supervised release. In the alternative, Lemon's counsel requested a sentence of one year and one day -- the same sentence the court had imposed on Lemon's co-defendant.

The district court adopted the Government's recommendation, revoking Lemon's supervised release and sentencing her to twenty-four months in prison. After announcing its sentence, the court addressed Lemon and commented on both the basis for its sentence and its concern about her mental health:

> I cannot imagine what was in your mind that led you to do this again, what you possibly could have been thinking that you could get away with this. To me it almost indicates some loss of contact with reality, that you could think you could possibly get away with this. And to do it, you know, over and over again while you are on supervised release, after having served state time and federal time for the similar type [of] conduct.
>
> So, I don't know whether you received any type of counseling when you were serving your time before, I don't know whether you will be able to this time, but I hope maybe you can. Because you have a serious emotional problem that would cause you to behave this way despite what it costs your children and your family. It's just so unfair to them, and you don't seem to get it.
>
> So, I have considered the seriousness of the offense, the revocation offenses, I have considered that this

3

is a category six criminal history, continuing to re-offend. I have considered that you do have a serious family situation, but you aren't really helping your family situation, you are hurting your family situation.

I have considered the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence.

I have also considered specifically the need to protect the public from further crimes. I believe that if you were out again you would be doing the same thing, and I believe that you need further correctional treatment and some type of evaluation. I'm going to recommend some sort of mental health counseling while you are in the BOP this time to see if there is anything they can do for you to stop this recidivist behavior.

Lemon noted a timely appeal of her sentence, and her counsel filed an Anders brief that identified no reversible error. After reviewing the record, we requested supplemental briefing on whether the district court impermissibly sentenced Lemon based on its perception that she needed rehabilitative mental health treatment.

II.

The only error Lemon now alleges is that the district court considered her rehabilitative needs when determining the length of her revocation sentence, in violation of Tapia v. United States, 131 S. Ct. 2382 (2011). As Lemon's counsel acknowledged at oral argument, this issue was not raised at the revocation

4

hearing. Therefore, we review for plain error. See United States v. Olano, 507 U.S. 725, 731 (1993). To prevail, Lemon must show that "an error (1) was made, (2) is plain (i.e., clear or obvious), and (3) affects substantial rights." United States v. Lynn, 592 F.3d 572, 577 (4th Cir. 2010). Even if Lemon makes such a showing, this court "may exercise its discretion to correct the error only if it seriously affects the fairness, integrity or public reputation of judicial proceedings." Id. (internal quotation marks and citation omitted).

A.

In Tapia, the Supreme Court held that the "Sentencing Reform Act precludes federal courts from imposing or lengthening a prison term in order to promote a criminal defendant's rehabilitation." 131 S. Ct. at 2385. In reaching that holding, the Court distinguished between permissible and impermissible discussions of rehabilitation at a sentencing hearing.[1] On the one hand, "[a] court commits no error by discussing the opportunities for rehabilitation within prison or the benefits of specific treatment or training programs." Id. at 2392. A court crosses the line, however, if it chooses to "impose or

---

[1] Although the sentence at issue in Tapia was imposed after the defendant's initial conviction, we have held that Tapia applies to revocation sentences. United States v. Bennett, 698 F.3d 194, 198 (4th Cir. 2012), cert. denied, 133 S. Ct. 1506 (2013).

5

lengthen a prison sentence to enable an offender to complete a treatment program or otherwise to promote rehabilitation." Id. at 2393 (emphasis omitted).

The underlying facts in Tapia illustrate this distinction. There, the district court had indicated that it chose the length of the defendant's sentence at least in part so that she could participate in a particular drug treatment program. Id. at 2385. Specifically, the court had explained that "[t]he sentence has to be sufficient to provide needed correctional treatment, and here I think the needed correctional treatment is the 500 Hour Drug Program. . . . I am going to impose a 51-month sentence, . . . and one of the factors that affects this is the need to provide treatment." Id. (alterations in original). The Supreme Court found that these comments "suggest[ed] that the court may have calculated the length of Tapia's sentence to ensure that she receive[d] certain rehabilitative services." Id. at 2393 (emphasis omitted). The Court remanded the case to the Ninth Circuit, which then held that the district court had in fact committed plain error. United States v. Tapia, 665 F.3d 1059, 1063 (9th Cir. 2011).

We have emphasized that Tapia "does not prevent a district court from considering [rehabilitation] in the course of a sentencing proceeding." United States v. Alston, 722 F.3d 603, 609 (4th Cir.) (emphasis added), cert. denied, 134 S. Ct. 808

6

(2013). Instead, "Tapia stands for the proposition that a court cannot impose or lengthen a sentence" to further a rehabilitative purpose. Id. (emphasis in original).

Accordingly, in Alston we rejected the defendant's claim of Tapia error because we determined that the defendant's rehabilitative needs did not affect the length of his sentence. Id. at 609. All the district court had said regarding rehabilitation at sentencing was that its sentence would "protect[] the public" from the defendant and "provide[] the needed treatment of care in the most effective manner possible." Id. at 608. We concluded that these comments indicated the district court's awareness of the rehabilitative benefits of the defendant's sentence, but they did not indicate that the court chose or lengthened the sentence because of those benefits. Id. at 608-09.

In United States v. Bennett, 698 F.3d 194 (4th Cir. 2012), by contrast, we concluded that the district court impermissibly linked the defendant's rehabilitative needs to the length of his sentence. The district court there noted that the defendant "needs intensive substance abuse treatment. So, the court will impose a sentence that provides ample time for that." Id. at

7

196-97.  We held that the court's reliance on rehabilitative needs in fashioning its sentence constituted error.[2]  Id. at 200.

Alston and Bennett illustrate the line between permissible comment upon a defendant's rehabilitative needs and reliance on those needs as a factor in selecting the length of his prison sentence.  This distinction accords with the "broad consensus" among our sister circuits that the presence of Tapia error turns on "whether a sentencing court's reference to rehabilitative needs [is] causally related to the length of the sentence." United States v. Del Valle-Rodriguez, 761 F.3d 171, 174 (1st Cir.) (emphasis added) (citing cases), cert. denied, 135 S. Ct. 293 (2014).

Such a causal relationship may be clearest when, as in Tapia, a sentencing court has a particular rehabilitative program in mind and uses the length of that program to justify the length of its sentence.  See, e.g., United States v. Kubeczko, 660 F.3d 260, 261 (7th Cir. 2011) (finding clear Tapia error where a district court explained that the defendant needed "to be in one place longer than 18 months" to get mental health treatment). Courts have also found Tapia violations when there

---

[2]  We then assumed that the error was plain, but we ultimately concluded that it did not affect the defendant's substantial rights because it was the "brazen breach of trust inherent in [the defendant's] unlawful actions," rather than his rehabilitative needs, that "drove the district court's sentencing decision." Bennett, 698 F.3d at 200.

8

are less clear indicia that rehabilitation affected the length of a defendant's sentence. The Eleventh Circuit has articulated the most expansive test, finding Tapia error whenever "the district court considers rehabilitation when crafting a sentence of imprisonment." United States v. Vandergrift, 754 F.3d 1303, 1310 (11th Cir. 2014) (emphasis in original). But in Vandergrift, as in Bennett, the sentencing court appeared to "consider" rehabilitation with an eye toward lengthening the defendant's sentence. The court there explained that "I've also got to consider what's best for the defendant as a factor in the equation" and observed that while the defendant "does not thrive in an unstructured environment," he could get mental health treatment and "vocational training for a period of time in the prison system." Id. at 1306 (emphasis added). No matter how the test is articulated, we find it unlikely that a court has committed Tapia error unless it has considered rehabilitation for the specific purpose of imposing or lengthening a prison sentence.

B.

With these considerations in mind, we hold that the district court did not plainly err when it discussed Lemon's need for mental health counseling at sentencing. In arguing to the contrary, Lemon attempts to align this case with Tapia and Bennett. See Appellant's Supp. Br. 11–12. But in contrast to

9

those cases, the district court here never suggested that its concern for Lemon's mental health was a factor in fixing the length of her sentence. In fact, the court's uncertainty about Lemon's counseling options suggests rehabilitation was <u>not</u> a factor. After observing that it did not "know whether [Lemon had] received any type of counseling" during her previous prison term, the district court commented that "I don't know whether you will be able to this time, but I hope maybe you can." It is difficult to conclude that the court lengthened Lemon's sentence so she could receive mental health treatment if the court was unsure whether such treatment was even available.[3]

Moreover, the district court provided a rationale for Lemon's sentence that did not rest, expressly or implicitly, on her rehabilitative needs. In particular, the court emphasized that Lemon had "continu[ed] to re-offend," and there was therefore a "need to protect the public from further crimes."

---

[3] In addition to <u>Tapia</u> and <u>Bennett</u>, Lemon relies on two unpublished cases for her argument that the district court impermissibly considered her rehabilitative needs. <u>See</u> Appellant's Supp. Br. 11 (citing <u>United States v. Pate</u>, 503 F. App'x 216 (4th Cir. 2013) (unpublished per curiam) and <u>United States v. Olds</u>, 464 F. App'x 117 (4th Cir. 2012) (unpublished per curiam)). Unpublished opinions have no precedential value in this circuit. <u>See</u> <u>Hentosh v. Old Dominion Univ.</u>, 767 F.3d 413, 417 (4th Cir. 2014). Even if published, neither case would aid Lemon's cause; in both, the sentencing court issued an above-Guidelines sentence for the express purpose of providing the defendant drug treatment. <u>See</u> <u>Pate</u>, 503 F. App'x at 217; <u>Olds</u>, 464 F. App'x at 118. These cases thus provide clear examples of <u>Tapia</u> error; Lemon's does not.

These considerations, rather than concern for Lemon's mental health, appear to have motivated the court's decision to impose its sentence.

To be sure, the court could have more clearly separated its discussion of Lemon's rehabilitative needs from its discussion of the factors that affected the length of her sentence. As we advised in Bennett, "[b]y keeping these distinct concepts distinct, courts will preclude the possibility of confusion on appeal over whether a Tapia error has occurred." 698 F.3d at 199. But even if we read ambiguity into the revocation hearing transcript, it is certainly not "clear or obvious," Lynn, 592 F.3d at 577, that the district court impermissibly considered rehabilitation. Accordingly, the court did not plainly err in sentencing Lemon.[4]

---

[4] At oral argument, Lemon's counsel pointed to the disparity between the sentences imposed on Lemon and her co-defendant as evidence that the district court must have considered her need for rehabilitation. Having reviewed the record in both cases, we are not troubled by the twelve-month difference in the revocation sentences. Although both defendants faced the same Guidelines range at their revocation hearings, Lemon had committed several more supervised release violations. And at the time of their underlying offenses, Lemon had nearly twice the criminal history points as her co-defendant. It is understandable that the district court would treat the two defendants differently.

III.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.