**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 24-4059**

_____

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

    v.

YONATHAN MELAKU,

        Defendant – Appellant.

_____

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Rossie David Alston, Jr., District Judge. (1:12-cr-00027-RDA-1)

_____

Argued: May 6, 2026                               Decided: June 17, 2026

_____

Before DIAZ, Chief Judge, and RICHARDSON and HEYTENS, Circuit Judges.

_____

Affirmed by published opinion. Judge Heytens wrote the opinion, which Chief Judge Diaz and Judge Richardson joined.

_____

**ARGUED:** Zachary Lee Newland, NEWLAND LEGAL, PLLC, Evergreen, Colorado, for Appellant. Jacqueline Romy Bechara, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee. **ON BRIEF:** David C. Boyer, NEWLAND LEGAL, PLLC, Midlothian, Texas, for Appellant. Jessica D. Aber, United States Attorney, Vetan Kapoor, Assistant United States Attorney, James L. Trump, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

TOBY HEYTENS, Circuit Judge:

"No procedural principle is more familiar" than that an argument "may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the [argument] before a tribunal having jurisdiction to determine it." *Yakus v. United States*, 321 U.S. 414, 444 (1944). That principle largely resolves this appeal. Yonathan Melaku raises four challenges to a district court's resentencing decision. But two of those challenges are forfeited because they were never raised before the district court, and the remaining two cannot overcome our "deferential abuse-of-discretion standard" of review. *Gall v. United States*, 552 U.S. 38, 41 (2007). We thus affirm.

I.

On five separate occasions in October and November 2010, Melaku "fired multiple rounds from a 9mm semi-automatic pistol at various military-related sites in the Northern Virginia suburbs of Washington, D.C." JA 32. In June 2011, Melaku was arrested at Arlington National Cemetery. He had been carrying a backpack containing (among other things) spent shell casings, spray paint, and ammonium nitrate that he intended to leave at or use on veterans' grave markers.

In January 2012, Melaku agreed to plead guilty to three charges: injuring government property in violation of 18 U.S.C. § 1361 (Count 1); using a firearm during a crime of violence in violation of Section 924(c)(1)(A) (Count 2); and attempting to injure a veteran's memorial on government property in violation of Section 1369 (Count 3). Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), the parties "agree[d] that the appropriate sentence" was "a total term of imprisonment of twenty-five (25) years on all

2

three counts." JA 23–24. Melaku also agreed to waive his right to appeal the conviction and any sentence imposed within the statutory maximum.

The district court accepted the parties' plea agreement and found Melaku guilty as charged. After a competency review—during which Melaku was diagnosed with schizophrenia but found competent to stand trial—the district court imposed consecutive sentences of 10 years on Count 1, 10 years on Count 2, and 5 years on Count 3.

Consistent with the plea agreement, Melaku did not file a direct appeal. More than three years after his sentencing, however, he sought postconviction relief under 28 U.S.C. § 2255. After another six years of litigation, this Court ruled for Melaku and directed the district court "to vacate [his] conviction under Section 924(c)" (that is, Count 2) "and resentence Melaku on the remaining two charges." *United States v. Melaku*, 41 F.4th 386, 395 (4th Cir. 2022). On remand, the district court ordered an updated Presentence Investigation Report and granted the defense's request for a psychiatric exam to reassess Melaku's competency.

The district court held a competency hearing at which a psychiatrist and Melaku's mother testified about the extent of his mental illness, medication regimen, recent medical compliance, and ongoing treatment plan. After the testimony concluded, the district court initially stated it "need[ed] to reject" the parties' previous "plea agreement" in its entirety given this Court's order to vacate Count 2 but later purported, with both sides' consent, to sever only "the provision" mandating a particular sentence. JA 141–42. Following some back-and-forth with the government about an appropriate sentence, the court considered the possibility of imposing a 20-year sentence but "pick[ing] a date certain within that time

3

frame where the matter would come back to Court similar to what we would do in a not guilty by reason of insanity" situation. JA 146. The government suggested that, if the court needed "greater assurance that" Melaku was "going to maintain" his treatment "regimen," it could "continue his sentencing" to a future date. JA 147. The court asked if Melaku was "interested in a postponement," raising the "possibility" that, if Melaku was "compliant" during any postponement period, "he may be in a better position to argue" for a time-served sentence. JA 151. Defense counsel conferred with Melaku before stating Melaku was "interested in that" (*id.*), and the court outlined a schedule that would have delayed the final sentencing for another 20 months. Before the hearing concluded, however, a Bureau of Prisons (BOP) lawyer raised concerns about the appropriateness of such a lengthy postponement. The court ordered additional briefing on that issue and set a status conference for just over a month later.

When the parties reconvened, the court announced it had decided "to go ahead and actually conduct the sentencing hearing today." JA 174. The court explained that its previous inclination to postpone resentencing further was driven by a desire "to protect Mr. Melaku and his rehabilitation" and "put [him] in the best position to be able to take care of his mental health issues." *Id.* But the court stated it did not "want to run afoul of any statutory or constitutional concerns by postponing this thing any further." *Id.*

After hearing from both sides and giving Melaku a chance to speak, the court calculated an advisory Guidelines range of 33 to 41 months. The court then imposed the statutory maximum sentence on the remaining two counts (120 months each) and ordered that the sentences run consecutively, for a total of 240 months of imprisonment (crediting,

4

of course, the time Melaku had already served). The court also set a hearing "30 days prior to [Melaku]'s release either from community placement or release from the Bureau of Prisons . . . to ensure that appropriate protocols are in place to make sure" his release "plan is one that has a reasonable opportunity for success." JA 194; accord JA 200–01 (written order). Before recessing the hearing, the district court told Melaku that it was "important, very important, that you stay adherent to your medication regimen" and that "[d]own the road, there may be the possibility for you to come back before the Court on something in the nature of a compassionate release or some other statutory provision to allow you to, once again, be considered for having your sentence reduced." JA 196. Melaku's lawyers did not object while the district court was announcing or explaining its sentence.

## II.

On appeal, Melaku first argues the district court violated 18 U.S.C. § 3582(a) by imposing a sentence longer than it otherwise would have "to ensure [his] medical compliance." Melaku Br. 27.[1] Because Melaku raised no such objection before the district court, that claim is forfeited, and we review only under the plain-error standard set out in Federal Rule of Criminal Procedure 52(b). See *United States v. Bennett*, 698 F.3d 194,

---

[1] This Court's vacatur of Count 2 and the district court's later partial rejection of the plea agreement raised questions about whether the broad appeal waiver contained in that agreement remains in effect. But despite previously arguing this appeal should be dismissed because of that appeal waiver, the government expressly abandoned any such claim in a pre-argument letter. We thus do not consider the effect of the appeal waiver here. See *United States v. Robinson*, 744 F.3d 293, 298 (4th Cir. 2014) (explaining that "[a] party who identifies an issue, and then explicitly withdraws it, has waived the issue," making it "not reviewable on appeal" (quotation marks removed)).

199–200 (4th Cir. 2012).

## A.

Obtaining relief on a forfeited claim "is difficult, as it should be." *Puckett v. United States*, 556 U.S. 129, 135 (2009) (quotation marks removed). A defendant who raises a timely "objection to [a trial] court's action and" identifies "the grounds for that objection," Fed. R. Crim. P. 51(b), alerts the court to a potential problem and gives it a chance to "correct or avoid [a] mistake," *Puckett*, 556 U.S. at 134. And "even when" a trial court "disagree[s] with [a] defendant's view of the law, a timely objection" can still "yield benefits" by prompting the court to clarify the basis for its decision or develop the factual predicate on which that decision rests. Toby J. Heytens, *Managing Transitional Moments in Criminal Cases*, 115 Yale L.J. 922, 958 (2006). In contrast, a defendant who neglects to raise a timely objection deprives the trial court of an opportunity to avoid error and foregoes a chance to develop a more detailed record that might assist a reviewing court.

The plain-error standard reflects that reality, while still creating a "strictly circumscribed" safety valve for appellate courts to step in if something goes badly awry. *Puckett*, 556 U.S. at 134. To obtain relief based on a forfeited claim, it is not enough to show a trial court erred by "[d]eviati[ng] from a legal rule" (prong one). *United States v. Olano*, 507 U.S. 725, 732–33 (1993). Instead, the defendant has the "burden of establishing" three other requirements. *Greer v. United States*, 593 U.S. 503, 508 (2021). To begin, any error must have been plain—that is, "clear or obvious, rather than subject to reasonable dispute" (prong two). *Puckett*, 556 U.S. at 135. The defendant also must show the error "affect[ed] substantial rights, which generally means that there must be a

6

reasonable probability that, but for the error, the outcome of the proceeding would have been different" (prong three). *Greer*, 593 U.S. at 507–08 (quotation marks removed). Finally, the defendant must establish "that the error had a serious effect on the fairness, integrity, or public reputation of judicial proceedings" (prong four). *Id.* at 508 (quotation marks removed). Failure at any prong ends the inquiry. See *id.*

## B.

Melaku has not shown that any violation of 18 U.S.C. § 3582(a) was "clear or obvious, rather than subject to reasonable dispute." *Puckett*, 556 U.S. at 135. We thus reject this claim at prong two, without reaching any other steps of the plain-error analysis.

### 1.

Section 3582(a) is captioned "Factors To Be Considered in Imposing a Term of Imprisonment." Its first sentence reads:

> The court, in determining whether to impose a term of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, *recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation*.

18 U.S.C. § 3582(a) (emphasis added).

Melaku's argument relies primarily on *Tapia v. United States*, 564 U.S. 319 (2011). In *Tapia*, a sentencing court "referred several times to [a defendant]'s need for drug treatment, citing" a particular BOP drug-treatment program known as "the 500 Hour Drug Program." *Id.* at 321–22. The sentencing court stated that "one of the factors" impacting its decision to impose a sentence at the top of the advisory Guidelines range was its desire to ensure the defendant "serve[d] a prison term long enough to qualify for and complete

7

that program." *Id.* at 322 (quotation marks removed). The Supreme Court held that Section 3582(a) "precludes federal courts from imposing or lengthening a prison term in order to promote a criminal defendant's rehabilitation." *Id.* at 321. And because "the sentencing transcript suggest[ed] the possibility that [the defendant]'s sentence was based on her rehabilitative needs," the Court reversed the court of appeals' decision and remanded for further proceedings without reaching prongs two through four of the plain-error analysis. *Id.* at 334–35.[2]

This Court has issued three published decisions addressing *Tapia* claims—all of which denied relief at different stages of the analysis. In *United States v. Bennett*, 698 F.3d 194 (4th Cir. 2012)—like *Tapia*—the district court chose a particular sentence (at least in part) to "provide ample time" for the defendant to obtain "intensive substance abuse treatment." *Id.* at 197. This Court concluded there was a *Tapia* error and "assum[ed] arguendo that the error was plain" before denying relief because the defendant "failed to show" the error "affected his substantial rights by influencing the outcome of the sentencing proceeding" (prong three). *Id.* at 200.

In *United States v. Alston*, 722 F.3d 603 (4th Cir. 2013), in contrast, this Court concluded there was no *Tapia* error despite the district court's statement that its chosen sentence "provide[d] the needed treatment of care"—there, "drug treatment" and "mental

---

[2] On remand, "the government concede[d] that [the defendant] met the first two prongs of the plain error standard" and the court of appeals concluded she had satisfied the third and fourth prongs as well. *United States v. Tapia*, 665 F.3d 1059, 1061 (9th Cir. 2011).

health treatment"—"in the most effective manner possible." *Id.* at 608. The Court explained that "[t]he district court . . . did not choose the length of [the defendant]'s prison sentence to correspond with the length of a rehabilitation program provided to prisoners" and emphasized that "*Tapia* does not prevent a district court from considering" a defendant's treatment needs "in the course of a sentencing proceeding." *Id.* at 608–09.

Finally, in *United States v. Lemon*, 777 F.3d 170 (4th Cir. 2015), this Court denied relief on a forfeited *Tapia* claim because "the district court did not plainly err when it discussed [the defendant]'s need for mental health counseling at sentencing" (prong two). *Id.* at 174. Though acknowledging that the district court "could have more clearly separated its discussion of [the defendant]'s rehabilitative needs from its discussion of the factors that affected the length of her sentence," *Lemon* concluded any "ambiguity" in the sentencing transcript was insufficient to show "clear or obvious" error. *Id.* at 175 (quotation marks removed).

## 2.

This Court's "cases hold that an error is plain if (1) the explicit language of a statute or rule resolves the question or (2) at the time of appellate consideration, the settled law of the Supreme Court or this Court establishes that an error has occurred." *United States v. Davis*, 855 F.3d 587, 595–96 (4th Cir. 2017); see also *Henderson v. United States*, 568 U.S. 266, 269 (2013) (holding the plainness of an error is assessed at "the time of appellate review" rather than the time the trial court acted). That is a high bar, and Melaku's *Tapia* claim does not clear it.

Melaku's strongest argument involves a statement the district court made shortly

9

before announcing his sentence. After discussing "the nature and circumstances of the offense" and "the history and characteristics of the defendant," JA 188–90; accord 18 U.S.C. § 3553(a)(1), the court turned to "the need [for] the sentence imposed to reflect" the four factors specified in Section 3553(a)(2). JA 189–90. During the ensuing discussion, the district court observed that "both psychiatrists" who evaluated Melaku agreed he "need[ed] to maintain his treatment regimen," and that one of the psychiatrists had opined that Melaku's "risk of reoffending" would be "reduced" "*only*" if he complied with that treatment plan. JA 190 (emphasis added). The court also remarked that Melaku had "demonstrated a tendency [i]n some circumstances not to continue his medication" and expressed concern that "the letters" Melaku submitted in support of his argument for a time-served sentence did "not contain necessarily concrete plans for how" Melaku would "adhere to his medication and/or treatment" if released immediately. *Id.* The court then stated:

> Accordingly, it appears that some period of *additional incarceration* is necessary for a couple of reasons: To protect the public *and to provide the defendant with the medical care and correctional treatment in a manner most effective.*

JA 191 (emphases added).

Melaku makes a two-step argument that this statement was improper under Section 3582(a) as construed in *Tapia*. Step #1: The "medical care and correctional treatment" referenced by the district court constitute "promoting correction and rehabilitation" under Section 3582(a). Step #2: The district court's reference to "additional incarceration" shows the court imposed a longer sentence than it otherwise would have to

10

further those goals.

As in *Lemon*, the district court certainly could have been more precise about what it was (and was not) saying. But we conclude Melaku cannot establish that the district court made an error that is "clear or obvious, rather than subject to reasonable dispute." *Puckett*, 556 U.S. at 135.

For one thing, Melaku cites no case that holds that ensuring a defendant receives needed treatment for an incurable medical condition like schizophrenia constitutes "promoting correction and rehabilitation" under Section 3582(a). Cf. 18 U.S.C. § 3553(a)(2)(D) (requiring district courts to consider "the need for the sentence imposed . . . to provide the defendant with needed . . . medical care . . . in the most effective manner"). "In the absence of [any] such authority," we cannot say that "the issue has . . . been resolved *plainly*." *Davis*, 855 F.3d at 596 (quotation marks removed).

But even if Melaku could get past Step #1, his argument founders at Step #2. Under this Court's cases, a successful *Tapia* claim requires showing that "a sentencing court's reference to rehabilitative needs is *causally related* to the length of the sentence." *Lemon*, 777 F.3d at 174 (alterations and quotation marks removed). Everyone agrees that a sentencing court can—indeed, must—consider how best "to protect the public from further crimes of the defendant" when deciding how long of a sentence to impose. 18 U.S.C. § 3553(a)(2)(C). And here, a reasonable reading of the transcript suggests the district court believed there was no way to protect the public *without* ensuring that Melaku's schizophrenia remained treated. Compare JA 191, with JA 181 (stating the Court had "to make sure that the members of the community are safe" and that "when Mr. Melaku

11

deteriorates, he is not a safe person to be around"). Melaku cites no case addressing that sort of intermingled causation, much less one establishing there is a *Tapia* error when a court imposes "additional incarceration" to "protect the public" from the effects of a defendant's unmedicated medical condition. JA 191.

Melaku also makes a more global argument, identifying "eight instances" (including the statements just noted) "where the district court clearly indicated that [his] sentence was imposed in order to promote rehabilitation and medical compliance." Melaku Br. 29. We conclude that none of the cited statements—alone or in combination—reveals a clear or obvious *Tapia* error.

For example, two statements that Melaku relies on implicate a question *Tapia* specifically reserved: whether Section 3582(a) "prohibit[s] courts from imposing *less* imprisonment in order to promote a defendant's rehabilitation." *Tapia*, 564 U.S. at 329 n.5 (quotation marks removed). Although this Court has suggested that Section 3582(a) imposes no such bar, see *United States v. Fowler*, 948 F.3d 663, 671 (4th Cir. 2020), we do not reject Melaku's argument on that basis. Instead, we note that neither "the explicit language of [the] statute" nor "settled law" establish that district courts may not impose (or consider imposing) a lower sentence to promote a defendant's rehabilitation. *Davis*, 855 F.3d at 595–96.

Melaku also points to general statements by the district court about its desire "to protect[ ] Mr. Melaku and his rehabilitation" and "put [him] in the best position to be able to take care of his mental health issues." Melaku Br. 29–30 (quoting JA 174); see *id.* at 30 (quoting statements about Melaku's "rehabilitative process," JA 183–84, and his need for

12

"structure in order to maintain compliance with his medication and treatment regime," JA 189). But *Tapia* makes clear that a sentencing "court commits no error by discussing the opportunities for rehabilitation within prison or the benefits of specific treatment or training programs," 564 U.S. at 334, and, as in *Alston*, none of these statements show the district court chose "the length of [Melaku's] prison sentence to correspond with the length of a rehabilitation program," 722 F.3d at 608–09. In addition, 18 U.S.C. § 3553(a)(2)(D) "expressly requires" a district court "to consider" whether its chosen sentence will "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." *Alston*, 722 F.3d at 609 (quotation marks removed). Viewed in isolation or in tandem, we see no error in these statements— much less a clear or obvious one.[3]

Forfeiture has consequences. Had Melaku raised a timely objection during the sentencing hearing, the district court would have had a chance to change course or clarify what it was saying. Either outcome could have prevented this appeal altogether or facilitated this Court's review by prompting the district court to further explain the precise rationale for its sentence or the legal theory on which it relied. Absent such an objection, we conclude Melaku cannot satisfy plain-error review's second prong and that his *Tapia*

---

[3] Melaku also references the district court's "unorthodox" decision (Melaku Br. 31) to order a status conference 30 days before his "release date or release to community confinement so that the parties and the Court can develop an appropriate release plan." JA 200 (written order). But Melaku neither objected to the district court's oral announcement of that plan, nor does he explain how it sheds further light on why the court picked the length of custodial sentence it did.

claim fails for that reason.

### III.

Melaku's remaining challenges fare no better.

### A.

Melaku argues his "sentence is procedurally unreasonable because the district court failed to properly consider the relevant § 3553(a) factors, predicated its sentence on clearly erroneous facts, and failed to meaningfully address Mr. Melaku's nonfrivolous arguments in mitigation." Melaku Br. 33. As always, we review the district court's sentence "under a deferential abuse-of-discretion standard." *Gall*, 552 U.S. at 41. We see no abuse of discretion here.

The district court did not rely on clearly erroneous information in describing Melaku's conduct as "a form of terrorism." JA 189; see *Gall*, 552 U.S. at 51 (appellate courts must ensure a district court did not "select[] a sentence based on clearly erroneous facts"). Melaku correctly points out that he was never "charged with any terroristic crime," that the PSR did not "include any terrorism related enhancements," and that a prosecutor stated during a previous hearing that Melaku's conduct "'was a product of delusional issues . . . rather than some sort of terroristic act.'" Melaku Br. 34 (emphasis removed) (quoting JA 143). But district courts are not bound even by the parties' "*stipulation*[*s*]" about "facts relevant to sentencing," U.S.S.G. § 6B1.4(d) (emphasis added), and there was no such stipulation here. Having reviewed the district court's statements in context, we understand the court to have been describing the "fear" Melaku's conduct "instilled . . . in the public" when he "fire[d] . . . into these public buildings that are symbols of our military," JA 188,

14

rather than suggesting Melaku committed a particular crime or was subject to a particular Guidelines enhancement.

The district court also did not rely on "clearly erroneous facts," *Gall*, 552 U.S. at 51, in concluding that "only some of" Melaku's "lengthy disciplinary history" in prison was "attributed to his mental health struggles," JA 189. Here too, Melaku claims "the Government conceded" otherwise during a previous hearing. Melaku Br. 35. But, here too, the district court would not have been bound by any such concession. And having reviewed the record, we see no clear error in the district court's assessment.

The district court also adequately addressed Melaku's arguments for a time-served sentence. For one thing, it was Melaku's lawyer—not an expert witness (as Melaku argues)—who asserted that Melaku's compliance with a treatment plan would "*prevent* him from reoffending." JA 181 (emphasis added). Nor did the expert state that "Melaku was ready and able to be released from" prison. Melaku Br. 37. Instead, the expert opined about an appropriate treatment plan "if" or "when" Melaku "becomes eligible for release." JA 128. And although Melaku's mother testified about healthcare providers she had identified, the district court made no clear error in concluding that this testimony did not assuage its concerns about the absence of a "concrete plan[] for how [Melaku]" would—unlike previous times—"*adhere to* his medication." JA 190 (emphasis added). We thus reject Melaku's procedural reasonableness arguments.

## B.

Melaku also is not the "rare" defendant who can show his sentence was substantively unreasonable. *United States v. Abed*, 3 F.4th 104, 119 (4th Cir. 2021)

15

(quotation marks removed). No doubt, the district court's 240-month sentence represented a substantial upward variance from the 33-to-41-month Guidelines range. But we "review all sentences—whether inside, just outside, or significantly outside the Guidelines range—under a deferential abuse-of-discretion standard," *Gall*, 552 U.S. at 41, and we identify no abuse of discretion here.

The district court carefully walked through how "the § 3553(a) factors, on a whole, justif[ied]" both its chosen sentence and "the extent of the variance." *Gall*, 552 U.S. at 51; see *United States v. Jeffery*, 631 F.3d 669, 679 (4th Cir. 2011) (emphasizing that "district courts have extremely broad discretion when determining the weight to be given each of the § 3553(a) factors"). The court noted the parties' "agree[ment]" that "[t]he guideline range [did] not account for the dangerous nature of [Melaku]'s conduct" and "that a large upward variance [was] appropriate." JA 191; accord JA 112 (Melaku's original brief on remand arguing for "a sentence of 180 months imprisonment" despite a Guidelines range of 33 to 41 months of imprisonment). The court described Melaku's actions as "very serious," noting that he "fired shots" at several military buildings, had "bomb-making materials" when he was arrested, and kept "additional bomb-making materials" in his home. JA 188. It emphasized that Melaku's conduct "instilled fear in the public" by "remind[ing] people of the" infamous "D.C. sniper's case" and stated "[i]t was only luck that no one was injured" by Melaku's actions. JA 188–89. The court acknowledged Melaku's "serious mental health condition" and "commended" him for his efforts to address it, while also noting Melaku's history of difficulties with "maintain[ing] compliance with his medication and treatment regimen" and the issues that arise when he

16

fails to do so. JA 189. The court thus concluded that "a serious sentence" was "required to promote respect for the law and to provide just punishment for the offense." JA 190.

As directed by *Gall*, we must "give[] due deference to the [d]istrict [c]ourt's reasoned and reasonable decision that the § 3553(a) factors, on the whole, justified the sentence." 552 U.S. at 59–60. Having done so, we reject Melaku's substantive reasonableness challenge.

C.

Finally, we address Melaku's assertion that the district court lacked "jurisdiction" to order a pre-release hearing. Melaku Br. 43. The argument Melaku raises has nothing to do with the district court's subject matter jurisdiction, and it is forfeited (if not waived) to boot.

"Subject-matter jurisdiction defines the court's authority to hear a given type of case." *United States v. Morton*, 467 U.S. 822, 828 (1984). The district court's power to hear Melaku's case came from 18 U.S.C. § 3231, whose "sweeping language . . . opens federal district courts to the full range of federal prosecutions for violations of federal criminal law." *Turkiye Halk Bankasi A.S. v. United States*, 598 U.S. 264, 269 (2023). "That's the beginning and the end of the jurisdictional inquiry." *United States v. Hartwell*, 448 F.3d 707, 716 (4th Cir. 2006) (quotation marks removed). In contrast, Melaku's claim involves the scope of the district court's "remedial authority" over a defendant who is still serving a sentence that the same court imposed—a matter that does not implicate subject matter jurisdiction. *United States v. Beasley*, 495 F.3d 142, 148 (4th Cir. 2007); accord

17

*Steel Co. v. Citizens for a Better Environ.*, 523 U.S. 83, 90 (1998).[4]

Because it is not jurisdictional in nature, Melaku's argument is subject to ordinary waiver and forfeiture rules. See, *e.g.*, *United States v. Cotton*, 535 U.S. 625, 629–31 (2002). Melaku offers no response to the government's assertion that he "forfeited, if not waived" his argument that the district court lacked authority to order a pre-release hearing by failing to "object to and, instead, agree[ing] to setting" such a hearing before the district court. U.S. Br. 45. Melaku also offers no argument that he can satisfy the plain-error standard under Federal Rule of Criminal Procedure 52(b). For those reasons, Melaku's argument is—at minimum—"doubly forfeited." *United States v. Gallagher*, 90 F.4th 182, 189 n.1 (4th Cir. 2024).[5]

\*     \*     \*

The judgment is

*AFFIRMED*.

---

[4] Neither of the nonbinding authorities Melaku cites is to the contrary. In *United States v. Wahi*, 850 F.3d 296 (7th Cir. 2017), the Seventh Circuit held that district courts "lack[] ancillary jurisdiction" "to reopen a closed criminal case to consider a request to expunge the judicial record based on an equitable balancing test that weighs the public and private interests at stake." *Id.* at 298. But there is no need to invoke ancillary jurisdiction here because the underlying criminal proceedings have never "been dismissed" and Melaku is still serving a sentence imposed by the district court. *Id.* at 300. And despite some loose use of the word "jurisdiction," we conclude that *Reeb v. Thomas*, 636 F.3d 1224 (9th Cir. 2011), is about the scope of a district court's remedial authority under 28 U.S.C. § 2241 rather than true subject matter jurisdiction. See *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 510 (2006) (noting that courts are sometimes "profligate in [their] use of the term" "[j]urisdiction" (quotation marks removed)).

[5] Melaku also argues that "[o]n remand," his case should be reassigned to a different district court judge "for resentencing." Melaku Br. 46 (boldface removed). Because we are neither ordering resentencing nor remanding, we need not consider that argument.